# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-KA-01463-SCT

*WILLIE RUSHING*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 12/03/2003 |
| TRIAL JUDGE: | HON. JAMES T. KITCHENS, JR. |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CARRIE A. JOURDAN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOSE BENJAMIN SIMO |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/22/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**BEFORE WALLER, P.J., EASLEY AND CARLSON, JJ.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     Willie Rushing went to trial in Lowndes County Circuit Court on a multi-count indictment charging him with several acts of prescription forgery.  Following a jury verdict finding Rushing guilty as to three counts of prescription forgery, the trial court entered judgments consistent with the verdicts, subsequently sentenced Rushing as a drug recidivist to three 10-year sentences to be served consecutively, and denied post-trial motions.  Rushing now appeals to us from the trial court's denial of his motion for a judgment notwithstanding the verdicts, or in the alternative, for a new trial.  Finding no reversible error, we affirm.

**FACTS AND PROCEEDINGS IN THE TRIAL COURT**

¶2.    On September 23, 2002, a man walked into Family Pharmacy in Columbus and presented the on-duty pharmacist, Billy Bailey, with a purported prescription from Dr. Jim Smith for Larry Somes for OxyContin, 40 milligrams.[1]   Bailey would later identify Willie Rushing as the man who presented this prescription to him.   Bailey recognized Rushing's face because Rushing had previously been in the pharmacy to have valid prescriptions filled.   Bailey filled this prescription.    Approximately two months later, on November 25, 2002, Rushing again went to Family Pharmacy in Columbus and presented Bailey with a purported prescription from Dr. Jim Smith for Larry Somes for OxyContin, 40 milligrams.    Once again, the prescription was filled.

¶3.    On February 18, 2003,[2] Rushing appeared at the Wal-Mart Pharmacy in Columbus and presented to the on-duty pharmacist, Van Miles, a purported prescription from Dr. Jim Smith[3] for Susan Rushing for Lortab, 7.5 milligrams.[4]   Rushing had likewise had valid prescriptions previously filled at Wal-Mart; however, on this date, Miles became suspicious.   There were at

---

[1]OxyContin is a very strong narcotic pain reliever similar to morphine. OxyContin contains oxycodone, thus making it a Schedule II drug.  Miss. Code Ann. § 41-29-115(A)(a)(1)(xiv) (Rev. 2001).

[2]Although the record reveals confusing testimony as to whether the date was February 12, 2003, or February 18, 2003, the later-to-be proven forged prescription, which was entered into evidence as Exhibit 1, contains the date February 18, 2003.

[3]This prescription, like the two prescriptions presented to Billy Bailey, had a heading of "Kemper Family Medical Clinic" in DeKalb.  Miles did not know at the time the identity of the doctor since he could not read the signature on the prescription, but he later learned that day that the doctor in question was indeed Dr. Jim Smith of DeKalb.

[4]Lortab is a pain reliever which contains hydrocodone, thus making it a Schedule II drug. Miss. Code Ann. § 41-29-115(A)(a)(1)(x) (Rev. 2001).

2

least two concerns Miles had about this prescription. As Miles stated at trial, "[t]he refill looks like it's been wrote (sic) over and looks like it's a photocopy underneath it." Also, when Miles keyed the doctor's DEA number into the computer, the DEA number was not valid. The DEA number on the prescription was AS 3465902. Therefore, Miles telephoned the Kemper Family Medical Clinic in DeKalb; however, the facility was closed.[5] Miles knew a pharmacist in DeKalb and thus telephoned this pharmacist who confirmed that Dr. Jim Smith of DeKalb would be the doctor associated with Kemper Family Medical Clinic. Upon obtaining Dr. Smith's telephone number from the DeKalb pharmacist, Miles telephoned Dr. Smith at his home. Dr. Smith stated that his DEA number was AS 3465982. Miles then pulled from the file a valid prescription which Rushing had previously brought in to be filled, and it indeed contained DEA number AS 3465982, but, according to Miles, the "8" could have easily been mistaken for a "0." After conducting this inquiry, Miles informed Rushing that he would not fill the prescription. Rushing then requested Miles to return this prescription he had attempted to have filled, and Miles refused. When this seemed to not satisfy Rushing, Miles told Rushing that "I can keep the prescription or we can call the law right here right now and y'all can talk it out." Rushing left.

¶4.    Unbeknownst to Rushing, after he left Miles and the Wal-Mart Pharmacy that day, Miles telephoned the Narcotics Division of the Columbus Police Department to alert law enforcement as to Rushing's suspicious activities. The Columbus P.D. immediately

[5]Although Miles testified that this event occurred on a Saturday; neither February 12, 2003, nor February 18, 2003, fell on a Saturday. However, Miles firmly believed that the first occurrence about which he testified was on a Saturday, thus the reason for the Kemper Family Medical Clinic being closed.

commenced an investigation of Rushing. Not lacking in persistence, Rushing returned to the Wal-Mart Pharmacy on March 17, 2003, to get a prescription refilled. Unfortunately for Rushing, the ever-vigilant Van Miles was once again the on-duty pharmacist. Miles telephoned the police and before the police arrived, Rushing left the store and Miles followed him out. When Miles spotted a police officer, he hollered "there he goes," pointing to Rushing, whereupon Rushing was arrested and immediately *Mirandized* by Sergeant Larry Taylor, a narcotics officer with the Columbus Police Department. After being advised of his **Miranda** rights,[6] Lt. Peavey, who was also there on the scene, then inquired of Rushing as to what mode of transportation he had used to get to Wal-Mart. Rushing, who was approaching a black vehicle parked in the handicap zone with the engine running and the windshield wipers on, replied that a man had driven him to Wal-Mart in a while Monte Carlo. Not being overly impressed with Rushing's response, Lt. Peavey ran a tag check on the black vehicle, which resulted in their learning on the scene that the black car was registered to Susan Rushing, Willie Rushing's wife, who was in the car at the time, and who had just herself been released from prison. Upon conducting a search incident to Rushing's arrest, the police found $5,886 in cash and various pills on Rushing's person, and upon conducting a search of the black vehicle, the police also found six blank prescription forms on the back seat. One of the prescription forms contained hand-writing and was covered with correction fluid to cover the writing. The other five blank prescription forms appeared to be photocopies of the first.

---

[6]***Miranda v. Arizona***, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *See **Manix v. State***, 895 So.2d 167, 180 (Miss. 2005).

4

¶5. After Rushing's arrest, further investigation by law enforcement led Corporal Spence Wallingford, a Columbus P.D. Narcotics Division officer, to the Family Pharmacy where he learned from pharmacist Billy Bailey of the prescriptions which were filled for Rushing on September 23, 2002, and November 25, 2002. These two prescriptions were retrieved from Bailey by Corporal Wallingford.

¶6. On August 11, 2003, the Lowndes County Grand Jury handed down a four-count indictment against Willie Rushing. The indictment alleged, inter alia, that Rushing, in Lowndes County, Mississippi, did unlawfully, wilfully, and feloniously, knowingly and intentionally transfer and deliver a forged prescription to (1) Van Miles on February 18, 2003 – Count 1; (2) Van Miles on March 17, 2003 – Count 2; Bill Bailey on September 23, 2002 – Count 3; and, Bill Bailey on November 25, 2002 – Count 4. On the day of trial, November 20, 2003, Rushing, through counsel, filed a motion to sever counts. Prior to commencement of voir dire, the trial judge conferred with counsel regarding pre-trial matters, at which time Rushing's counsel informed the trial court of the just-filed motion to sever. In response, the State, through the assistant district attorney, informed the trial court and defense counsel, that the State would not call up Count 2 for trial, but the State did oppose the motion to sever as to Counts 1, 3 and 4, which the State argued could appropriately be tried together in accordance with statute, uniform rule and case law. The trial court denied Rushing's motion to sever counts, and also, over Rushing's objection, the trial court granted the State's motion to amend the indictment to charge Rushing as a drug recidivist under Miss. Code Ann. § 41-29-147 (Rev. 2001).

5

¶7.    The case proceeded to trial as to Counts 1, 3 and 4.    In addition to pharmacists Van Miles and Billy Bailey, and police officers Larry Taylor and Spence Wallingford, the State also called Dr. Jim Smith, who confirmed that Rushing had been his patient for several years.    Dr. Smith recalled prescribing Lorcet 10/650, a pain pill, for Rushing, and possibly also Lortab 7.5.    However when presented with Exhibit No. 1 (the February 18, 2003 prescription), Exhibit No. 2 (the September 23, 2002 prescription), and Exhibit No. 3 (the November 19, 2002 prescription passed on November 25, 2002), Dr. Smith unequivocally stated that his signature did not appear on these prescriptions, his DEA number did not appear on these prescriptions, and he did not write or authorize these prescriptions.

¶8.    In Rushing's case-in-chief, Wallingford, Taylor, and Miles were called to testify and Rushing testified in his own behalf.    Rushing basically testified that the pharmacist, Billy Bailey, simply misidentified him as the person who passed these forged prescriptions to him because Larry Somes (the "patient" listed on the two prescriptions) was about the same age and build as Rushing.    As to the prescription for Susan Rushing which was presented to Van Miles on February 18, 2003, Rushing stated that Susan was outside in the car at the time and it was not unusual for he and Susan to have each other's prescriptions filled.    Rushing stated that if, on February 18, 2003, he presented a forged prescription to Bailey, it was because he did not have his reading glasses with him.    Specifically, as to all three prescriptions, Rushing testified:

> Q.  Did you knowingly pass a forged prescription for anyone?
>
> A.  Knowingly, I never took one.  As you see, I wear glasses, and if I was handed one to take in, it could have been a possibility because I wouldn't know Dr.

Smith's wasn't the same handwriting if I had done that, but I don't recall doing that.

Rushing also admitted, however, that he could not dispute Dr. Smith's testimony that he (Dr. Smith) did not write the three prescriptions in question because, in Rushing's opinion, Dr. Smith was "a good man." Rushing explained the large amount of cash found on his person at the time of his arrest by stating that he bought and sold cars, and he dealt in cash, thus it was not unusual for him to carry around as much as $25,000 in cash. Rushing also testified that he did not know anything about the blank prescription forms found in Susan Rushing's vehicle at the time of his arrest. Although Rushing lived in Savannah, Tennessee, he found nothing unusual in having a physician in DeKalb, Mississippi, and filling prescriptions in Columbus, Mississippi. In fact, Rushing admitted that on the day he was arrested, he and Susan had driven from Savannah, Tennessee, to the Wal-Mart Pharmacy in Columbus, Mississippi, to have the prescription filled.

¶9.     After the State's rebuttal, the trial judge's reading of the instructions to the jury, and closing arguments from counsel, the jury retired to deliberate and in due course returned verdicts of guilty as to all three counts of prescription forgery. Although the maximum term of imprisonment for prescription forgery is five years, since Rushing was charged as a drug recidivist pursuant to statute, the trial court doubled the term of imprisonment and sentenced Rushing, inter alia, to serve three 10-year sentences to run consecutively. *See* Miss. Code Ann. § 41-29-147 (Rev. 2001). After the denial of post-trial motions, Rushing perfected his appeal.

**DISCUSSION**

¶10. Rushing, through counsel, assigns as error the trial court's denial of his motion to sever counts, and the trial court's rulings on certain jury instructions. However, during the pendency of this appeal, Rushing filed with us a pro se application to proceed in the trial court on a post-conviction relief (PCR) motion. *See* Miss. Code Ann. §§ 99-39-1 et seq. (Rev. 2000). In his PCR motion, Rushing claims that his convictions and sentences are illegal and that he received ineffective assistance of counsel. Rushing subsequently filed a motion for voluntary dismissal, without prejudice, correctly acknowledging that his application to proceed in the trial court on a PCR motion was premature since his case was still pending on direct appeal. *See* Miss. Code Ann. §§ 99-39-7, -27 (Rev. 2000). *See also* **Connell v. State**, 691 So.2d 1004, 1006 (Miss. 1997). Thus, by an order previously entered by this Court, Rushing's motion to dismiss his PCR motion has been granted. Accordingly, we need not discuss Rushing's pro se assertions contained in his PCR motion. Likewise, we note that approximately four months after filing his application to proceed in the trial court on a PCR motion, Rushing filed with us a document entitled "Application for Leave to File Pro Se Supplemental Appellant Brief;" however, by prior order, this application was denied. **I. WHETHER THE TRIAL COURT ERRED IN DENYING RUSHING'S MOTION TO SEVER COUNTS IN THE MULTI-COUNT INDICTMENT.**

¶11. Rushing asserts that the trial judge improperly denied his motion to sever the counts in his indictment which had the practical effect of disallowing a separate trial before a different jury as to each count. Rushing also asserts that this Court should apply a different standard of

review because of a procedural error committed by the trial court in conducting the pre-trial hearing on the motion to sever.

¶12.    For issues of severance, this Court applies an abuse of discretion standard of review. *Brawner v. State*, 872 So.2d 1, 6-7 (Miss. 2004). However, Rushing argues that in his case today, this Court should apply a de novo standard of review because the trial court improperly placed the burden on him to go forward at the pre-trial hearing on the motion to sever counts, even though the State is required at such a hearing to present a prima facie case that the multi-count indictment meets the requirements of the applicable statute and our case law.

¶13.    Mississippi law allows for both multi-count indictments and multi-offense trials under certain circumstances.    In trials concerning multi-count indictments, severance is unnecessary in Mississippi if the acts or transactions are connected together as part of a common scheme or plan and if the indictment was otherwise proper.    Miss. Code Ann. § 99-7-2 (Rev. 2000) states in pertinent part:

> (1) Two (2) or more offenses which are triable in the same court may be charged in the same indictment with a separate count for each offense if: (a) the offenses are based on the same act or transaction; or (b) the offenses are based on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan.
>
> (2) Where two (2) or more offenses are properly charged in separate counts of a single indictment, all such charges may be tried in a single proceeding.

The Mississippi Uniform Rules of Circuit and County Court Practice (URCCC) likewise address multi-count indictments.    The provisions of URCCC 7.07 (A.) & (B.) are identical to the above statutory language.    It is no surprise that the State and Rushing disagree as to whether

9

the multiple counts in the indictment were proper, or whether the circumstances of the offenses warranted severance of the counts, thus necessitating a separate jury trial for each count.

¶14.  *Corley v. State*, 584 So. 2d 769, 772 (Miss. 1991), offers guidance to our trial courts concerning the appropriate pre-trial procedure to follow when confronted with a motion to sever offenses in a multi-count indictment.  In a *Corley* hearing, the State carries the burden to make out a prima facie case showing the offenses charged are within the language of the statute.  *Id.* at 772.  If the State meets its initial burden, the defendant may thereafter rebut the State's case by showing the "offenses were separate and distinct acts or transactions."  *Id.*  In *Corley*, this Court laid out three cornerstone considerations for the trial court: "whether the time period between the occurrences is insignificant, whether the evidence proving each count would be admissible to prove each of the other counts, and whether the crimes are interwoven."  *Id.*  By way of a footnote, we also stated that the issue of whether these offenses might be admissible pursuant to Miss. R. Evid. 404(b) was totally irrelevant to the trial court's consideration of a motion to sever offenses in a multi-count indictment.  *Id.* n.1.  We will review the trial court's decision under an abuse of discretion standard if the trial court did in fact follow this procedure.  *Id.*  Turning to today's case, in relying on Miss. Code Ann. § 99-7-2(2), the State argued at the pre-trial motion hearing that all three counts could appropriately be tried together.  While not exactly following the procedural guidelines suggested in *Corley*, the trial court nonetheless heard from counsel for the State and Rushing, and in due course

10

denied Rushing's motion to sever offenses and allowed the trial to proceed to trial on all three counts.

¶15.    We stated in *Corley*: "If a trial court follows [the correct] procedure, this Court will review the trial court's decision under the abuse of discretion standard giving due deference to the trial court's findings." *Id.* at 772 (citing *McCarty v. State*, 554 So.2d 909, 916 (Miss. 1989)). To fully address this issue, we refer to the record of the proceedings when this outstanding motion to sever counts was brought to the trial court's attention shortly before commencement of voir dire on the morning of trial.   The following occurred outside the presence of the jury venire:

> BY THE COURT: All right.  Since we do have a copy of the defendant's motion to sever, we can argue that one first and hear on that one first.  Are you ready to proceed on your motion, Ms. Jourdan [defense counsel]?
>
> BY [DEFENSE COUNSEL]: Thank you, your Honor.  Your Honor, I want to be sure that I'm understanding the State's position correctly so that I don't misstate anything.  I think Ms. Hayes-Ellis [prosecutor] advised me that she would not be proceeding on Count 2; is that correct?
>
> BY [PROSECUTOR]: That's correct.   Your Honor, today the State intends to prosecute on Counts 1, 3, and 4.
>
> BY THE COURT: All right.
>
> BY [DEFENSE COUNSEL]: Your Honor, let me begin by saying that I filed a fairly brief motion to sever, so I'm going to spend a little bit of time expounding on it for the Court. First of all, your Honor....

Rushing asserts that the trial judge placed the burden on him to show why the offenses in the multi-count indictment should be severed when the trial judge commenced the hearing by inquiring of defense counsel as to "her position on severance."   This assertion is incorrect.

11

A fair reading of the record reveals that all the trial judge did was to ask defense counsel if she was "ready to proceed" on the motion to sever. The trial judge did not place upon Rushing the burden of proving why the offenses should be severed. Rushing, through counsel, chose to take the lead and argue the motion first to the trial judge. There was no objection lodged by Rushing's counsel at the time, and in fact, Rushing's counsel unhesitatingly commenced her presentation of the motion when asked by the trial court if she was ready to proceed on the motion. A close reading of the record also reveals that the trial judge asked questions of counsel for both the State and Rushing, and in fact, Rushing got two chances to argue to the trial judge, with the prosecutor's argument being sandwiched in between Rushing's two arguments. After the presentation by counsel for the State and Rushing, the trial judge issued a detailed bench ruling on Rushing's motion to sever, wherein he stated, inter alia:

> The factors the Court must look at when confronted with a severance issue is the time period between the offenses, whether the evidence proving each offense would be admissible to prove the other counts, and whether the offenses are interwoven. Here the State seeks to try Count 1 of an indictment that the allegation is this occurred on or about the 18th day of February, 2003; Count 3 that the allegation is that this occurred on or about the 23rd day of September, 2002; and Count 4 that it occurred on or about the 25th day of November, 2002. You're talking from the 23rd day of September of 2002 until the 18th of February, 2003, essentially about five months. All of these are alleged to have occurred within about a five-month time period, the three that the State is seeking to try. That is not an overly long time period. It's not as if this has occurred over the course of years. Five months is a relatively short period of time.
>
> The second factor the Court may consider or must consider is whether evidence proving each offense would be admissible to prove the other counts. While the Court does not know this case, but what I've heard from both and what I can tell from the indictment is the same doctor is apparently going to be a witness in all three counts. One pharmacist is a witness in at least two of the three counts and

12

then there is yet another pharmacist who is in Count 1, but the allegation was in Count 2 that he was also in that. The State has indicated they are not going to proceed on Count 2. It seems to be a fairly small universe of witnesses that will be called in this case to try this case.

Finally, the last factor that the Court looks at is whether the offenses are interwoven. They are the same offense. They are obtaining controlled substances apparently by fraud and it does seem that this would militate, quite frankly, in favor of trying these together because it's not like he's charged with murder that occurred February of 2003 and in 2002 of September he's charged with child abuse or child molestation or rape or something totally different. The State has alleged that there is a common scheme or plan. That is something that the Court is supposed to look at and that's what the Mississippi Supreme Court has said in Ott versus State, 722 So2d 576. That's a 1998 Mississippi case. The allegation here is that there is some kind of scheme or plan that Mr. Rushing had adopted to be able to cash or to distribute these prescriptions. The defendant argues that he has separate offenses – some that he was allowed to pass; some he did not pass. The Court does not see how trying these together will deprive him of those defenses.

The trial court again observed that these three offenses occurred within a five-month period, and the trial court likewise observed that the evidence concerning each of these three offenses would involve basically the same witnesses, and that all three offenses were alleged to have occurred within the city limits of Columbus. In the end, the trial court denied Rushing's motion to sever. From our review of the record, we can thus conclude with confidence that the trial court did not misapply our recommended procedures as discussed in *Corley*. Therefore, we will review the trial court's decision on Rushing's motion to sever under an abuse of discretion standard, affording due deference to the trial court's findings. *Corley*, 584 So.2d at 772.

¶16. In discussing the propriety of the trial court's denial of Rushing's motion to sever, we find that the trial court properly allowed the single trial based on the merits of the arguments after weighing the three *Corley* considerations. First, for a multi-count trial to be proper, the

13

trial judge must determine that the time period between the occurrences is insignificant. The time period involved here is five months. The trial judge found that five months was "not an overly long time period." Rushing argues otherwise, citing numerous cases where this Court dealt with shorter time periods involving different offenses in multi-count indictments. *See, e.g., Patrick v. State*, 754 So. 2d 1194 (Miss. 2000) (separate counts of burglary, armed robbery, aggravated assault, and grand larceny occurring within seven hours of each other were properly tried together); *Ott v. State*, 722 So. 2d 576 (Miss. 1998) (multi-counts of drug offenses occurring in one day were properly tried together); *McCarty v. State*, 554 So. 2d 909 (Miss. 1989) (trial judge abused his discretion by refusing to sever two counts of burglary committed two days apart and on two different homes); *Gray v. State*, 549 So. 2d 1316 (Miss. 1989) (eight counts of making harassing phone calls committed on different victims with different subject matter and occurring two weeks apart were not part of a common scheme or plan). Rushing even cites two cases with comparable or longer time periods than the one involved here. In *Eakes v. State*, 665 So. 2d 852, 861-62 (Miss. 1995), we found five months between the first and last counts of sexual crimes insignificant where only one victim was involved, but also considered that the crimes were the "same type of act." In *Allman v. State*, 571 So. 2d 244, 248-49 (Miss. 1990), this Court found a nine-month time span did not justify severance when the acts of child rape were committed by the same defendant upon the same victim.

14

¶17.    Rushing attempts to distinguish these cases from the facts in his case by pointing out that there were common victims in the above-mentioned cases, whereas, in his case, there was no common victim and thus the five-month time frame becomes more significant. Whether the victim is common to all crimes has never alone been a factor to determine questions of trials involving multi-count indictments.    Additionally, the fact that the pharmacy or manufacturer of the prescription drugs lost no money when these prescriptions were obtained through forgery is an immaterial consideration here.    Though five months may be too long a period of time for certain crimes to retain their character as being part of a common scheme or plan, this is not so in this case.    The five-month time frame does not alone warrant severance in this case when the first two offenses are almost identical and the third offense bears such a strong resemblance to the first two.    Combined with the evidence of blank prescriptions forms found at the scene, the five-month span is insufficient to say the offenses were separate and distinct actions or transactions.    While we agree with Rushing that "there is no bright line test as to the amount of time that is significant or insignificant" when considering motions to sever counts/offenses, we refuse to attempt to create a bright line test where the law clearly views the time together with the other factors.    Rushing  also concedes, "The time factor has to be looked at with regard to the totality of the events."    When reading the *Corley* factors together with regard to the totality of the events, the trial judge did not abuse his discretion in finding that five months was not such a significant amount of time so as to require severance.    The first *Corley* consideration is met.

¶18. Second, the trial judge must determine if the evidence proving each count would be admissible to prove each of the other counts. As the State correctly points out, the source of evidence in this case is limited. The witnesses consisted of the arresting officer, the investigating officer, the two pharmacists, and Dr. Smith. All the witnesses except the two pharmacists were witnesses for all three counts of the indictment. One pharmacist testified concerning Count 1, while the other pharmacist testified as to Counts 3 and 4. The total physical evidence at trial consisted of the blank prescription forms, one valid prescription, the forged prescriptions given to Miles and Bailey, and various pills found on Rushing at the time of the arrest. All of this physical evidence would have been admissible in any single trial of one of these counts if the offenses had been severed. As this Court pointed out in *Ott*, the Mississippi Rules of Evidence allow the admissibility of evidence of other offenses to prove intent, preparation, and plan. 722 So. 2d at 581. "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Miss. R. Evid. 404(b). Without question, the total evidence in this case would have been admissible in separate trials of each count. The second *Corley* consideration is met.

¶19. Finally, the trial judge must find that the crimes are interwoven. Succinctly stated, these counts involve too many similar factors when viewed together, to be anything but clearly linked and part of the same common scheme or plan. The crimes here are clearly interwoven.

16

*See* **Neal v. State**, 451 So.2d 743, 758-59 (Miss. 1984). The third **Corley** consideration is thus met.

¶20.   In **Corley**, this Court was clear concerning its policy against trying unrelated counts in a single trial.

> We have been, and remain, unwilling to allow separate and distinct offenses to be tried in the same criminal proceeding. We do so in order to avoid potential problems of a jury finding a defendant guilty on one unproven count due to proof of guilt on another, or convicting a defendant based upon the weight of the charged offenses, or upon the cumulative effect of the evidence.

584 So. 2d at 772.   This Court remains faithful to the principle that a jury should not find the defendant guilty of at least one offense, simply because he is charged with so many.   However, this strong policy consideration is not in danger here.   The evidence offered at trial by the State was not to establish that guilt of one offense automatically equals guilt of all of the offenses, but rather to show a common scheme or plan on Rushing's part.   Simply put, these offenses were separate and distinct acts or transactions in this case.

¶21.   For these reasons, we find that the trial court did not abuse its discretion in refusing to sever the three counts of forged prescription as alleged in Rushing's indictment.   Therefore, we find this issue to be without merit.

## II.   WHETHER THE TRIAL COURT ERRED IN ITS INSTRUCTIONS TO THE JURY SO AS TO PREJUDICE RUSHING'S RIGHTS TO A FAIR TRIAL.

¶22.   Rushing asserts that the trial court erred in granting Instruction S-5 as submitted by the State, and that the trial court further erred in failing to sua sponte give a limiting (cautionary) instruction informing the jury as to the limited purpose for which the jury could consider the

17

evidence concerning the two prescription drugs found on Rushing's person at the time of his arrest.

### A. Trial court's granting of Instruction No. S-5.

¶23.   Rushing complains of an aiding and abetting instruction (No. S-5) which was submitted by the State and granted by the trial court.  Instruction No. S-5 stated:

> The Court instructs the Jury that under the laws of Mississippi anyone who aids, assists, or encourages in the commission of a crime is deemed a principal to that crime, and is just as guilty as if he committed the crime himself.  Therefore, if you find from the evidence in this case beyond a reasonable doubt that the defendant, WILLIE RUSHING, aided, assisted and encouraged another or others in the forgery of the prescriptions by carrying those prescriptions to the various pharmacists and presenting them to be filled, then the defendant is a principal to those offenses under the laws of the State of Mississippi.

¶24.   In reviewing a trial court's grant or denial of jury instructions, our standard of review is that we do not read the jury instructions in isolation, but instead we read them as a whole. No one instruction is to be read alone or taken out of context. *Young v. State*, 891 So.2d 813, 819 (Miss. 2005); *Hawthorne v. State*, 835 So.2d 14, 20 (Miss. 2003); *Woodham v. State*, 800 So.2d 1148, 1156 (Miss. 2001).  "A defendant is entitled to have jury instructions given which present his theory of the case.  However the trial judge may also properly refuse the instructions if he finds them to incorrectly state the law or to repeat a theory fairly covered in another instruction or to be without proper foundation in the evidence of the case."  *Young*, 891 So.2d at 819-20 (quoting *Howell v. State*, 860 So.2d 704, 761 (Miss. 2003) (quoting *Thomas v. State*, 818 So.2d 335, 349 (Miss. 2002) and *Humphrey v. State*, 759 So.2d 368, 380 (Miss. 2000)).   When reading the instructions as a whole, we must determine whether the

jury was properly instructed. ***Burton ex rel. Bradford v. Barnett***, 615 So.2d 580, 583 (Miss. 1993). This proposition stands even when one specific instruction is arguably faulty. "Defects in specific instructions do not require reversal 'where all instructions taken as a whole fairly – although not perfectly – announce the applicable primary rules of law.'" ***Id.*** (citations omitted).

¶25. In reading not only Instruction No. S-5, but all the jury instructions, as a whole, it is clear that Rushing's jury was not unfairly or erroneously instructed. The record of the jury instruction conference reveals that when the trial judge called up Instruction No. S-5 for discussion, the following occurred:

> BY [DEFENSE COUNSEL]: Um, your Honor, I believe I would object to this because I don't think there's evidence in the case to support this jury instruction.
>
> BY THE COURT: State?
>
> BY [PROSECUTOR]: In response your Honor, the defendant, if I understand his defense in this case to Count 1 is that I didn't do it, but if I did do it, I did it because my wife gave it to me and I took it in there.
>
> BY [DEFENSE COUNSEL]: Your Honor, he was asked that question point blank and he said no.
>
> BY THE COURT: The Court recalls the testimony being that he did not pass these scrips, but then he indicated on cross-examination that if he did take them in there and if they had been forged, someone else would have been done it (sic) but he got these scrips from his wife; and he also unsolicited indicated to the jury that his wife had just gotten out of the penitentiary for doing this same thing. That was unsolicited when you asked him on direct examination.
>
> BY [DEFENSE COUNSEL]: Your Honor, but the burden of proof is on the State and the State is seeking a jury instruction on something that they didn't produce any evidence or any witnesses of any conspiracy at all.

BY THE COURT: I know, but the evidence seemed to have come from your client. Whether it comes on direct examination by the State's witnesses or by the defense witnesses, at the end of the case I've got to look at all the evidence that's before the jury and the jury – now, he was very careful to say, I'm not accusing her of doing this, but he said she's the one that took me to the store to get these drugs and she's the one that handed me these prescriptions, and oh, by the way, she just got out of prison for doing this same thing. Not in that particular order, but that was the gist of his testimony. I find that there is sufficient evidence that a jury could find this and I will give this instruction.

¶26. The trial court correctly recalled the gist of Rushing's testimony. At least as to Count 1, regarding the passing of the prescription to pharmacist Van Miles on February 18, 2003, without Instruction No. S-5, the jury could have been left confused as to the legal culpability of Rushing under our state law since the jury knew that Susan was outside in the car and Rushing was at least inferentially trying to leave the impression with the jury that he was acting on behalf of Susan. Instruction No. S-5 was not peremptory in nature, and it did not mandate the jury's finding of guilt if the jury found Rushing to have aided and assisted others (such as Susan). This instruction only explained to the jury that an aider and abetter was deemed under our law to be a principal to the offense. The instruction informed the jury that if the jury found from the evidence beyond a reasonable doubt that Rushing "aided, assisted and encouraged another or others in the forgery of prescriptions by carrying those prescriptions to the various pharmacists and presenting them to be filled," then Rushing was a principal to the offenses under Mississippi law.

¶27. Instruction Nos. S-2, S-3 and S-4 were the elements instructions for the three indicted crimes, and these three instructions were identical in their language, except for the date of the offense and the name of the pharmacist. Instruction No. S-2 was the elements instruction for

20

the February 18, 2003, encounter with Van Miles at Wal-Mart. Via this instruction, the jury was informed that in order to find Rushing guilty of passing a forged prescription on this occasion, the jury had to find from the evidence beyond a reasonable doubt that Rushing did "unlawfully, wilfully, feloniously, knowingly and intentionally transfer and deliver to Van Miles, a pharmacist, a prescription upon which the name of Dr. Jim Smith, a licensed medical practitioner, had been forged."

¶28.    The jury was informed, inter alia, by way of Instruction No. C.01, that the jury was "not to single out one instruction alone as stating the law, but you must consider these instructions as a whole." The jury was also informed via Instruction No. S-1 (the form of the verdict), that as to each of the three counts, the jury must consider each count separately, that each count was a separate case, and that separate verdicts of either guilty or not guilty (or unable to reach a verdict) should be rendered in each count.

¶29.    All of the instructions, when read together and considered as a whole, make it clear that Rushing was to be found "guilty as charged" only if the jury found beyond a reasonable doubt that Rushing committed all of the elements of the crime of prescription forgery, namely that he "knowingly or intentionally" passed a "forged prescription of a practitioner" to the pharmacists involved in this case. *See* Miss. Code Ann. § 41-29-144(2) (Rev. 2001). We find, without question, that the jury instructions in this case, when read together, appropriately informed the jury of the applicable law. Even if we were to find by some stretch of the imagination any error in Instruction No. S-5, which we do not, this Court has held that failure of one instruction to set out properly a necessary element of a crime is not error when the

21

element is correctly included in other instructions. *Gray v. State*, 487 So. 2d 1304, 1308 (Miss. 1986).

¶30.   For the foregoing reasons, we find that the trial court appropriately granted Instruction No. S-5; therefore this issue is without merit.

### B. Trial court's failure to sua sponte give a limiting (cautionary) instruction.

¶31.   In the final two paragraphs of his brief, Rushing raises an issue of the trial judge's being required to submit limiting instructions sua sponte to the jury regarding the evidence of the prescription drugs found on his person at the time of the arrest.   In making his assertion that the trial judge should have sua sponte given a limiting instruction to the jury, Rushing relies on *Smith v. State*, 656 So. 2d 95, 99 (Miss. 1995), where this Court held that admission of evidence of prior acts allowed pursuant to Miss. R. Evid. 404(b) required the trial judge in certain circumstances to sua sponte instruct the jury as to the limited consideration that the jury may give to such evidence.   However, Rushing acknowledges our recent decision in *Brown v. State,* 890 So.2d 901, 913 (Miss. 2004), overruling *Smith* as to the requirement of the trial judge to sua sponte give a limiting instruction after receiving Miss. R. Evid. 404(b) evidence.

¶32.   In *Smith*, we see the culmination of this Court's long struggle with convictions secured under our "possession (of drugs) with intent (to sale/distribute) laws." *See* Miss. Code Ann. § 41-29-139(a) (Supp. 2004).   How does the State   reach into a defendant's mind and prove intent? In *Smith*, we stated:

22

> Nevertheless, we must be mindful of our rules. We have promulgated M.R.E. 105 which clearly contemplates that restrictive instructions be given upon request and as the Comment acknowledges, that in the absence of a request, there is no error. M.R.E. 105 and Comment. We are loath to reverse for plain error in the face of a rule so clear. We say for the future, however, that wherever 404(b) evidence is offered and there is an objection which is overruled, the objection shall be deemed an invocation of the right to MRE 403 balancing analysis and a limiting instruction. The court shall conduct an MRE analysis and, if the evidence passes that hurdle, give a limiting instruction unless the party objecting to the evidence objects to giving the limiting instruction.

656 So.2d at 100. While there is no doubt that this Court in *Smith* was focusing on cases involving evidence of prior drug sales of a defendant to prove the "intent" element of "possession of drugs with intent to sale/distribute," the language in *Smith* is admittedly unqualified as to its applicability in all cases involving Rule 404(b) evidence. However, in *Brown*, we once and for all laid this issue to rest when we stated:

> Today we abandon *Smith's* requirement that a judge issue a sua sponte limiting instruction and return to the clear language of Rule 105. The rule clearly places the burden of requesting a Rule 404(b) limiting instruction upon counsel. The rule is controlling, and to the extent that *Smith* and its progeny contradict that plain language they are overruled.

890 So.2d at 913.

¶33. Rushing reads *Brown* correctly to note that it changed the rule pronounced in *Smith*, but argues that *Smith* was still in effect at the time of his trial and thus required the trial court in today's case to sua sponte give a limiting instruction to the jury regarding the 404(b) evidence found on his person at the time of the arrest, namely the actual prescription drugs. However, there is one problem with Rushing's request. Here is the sum total of Rushing's argument on this issue:

23

> The trial court did not give a limiting instruction related to this evidence. This trial was conducted November 20[th] and 21[st], 2003. At that time, the opinion in ***Brown v. State***, 890 So.2d 901 (Miss. 2004), had not been issued. Therefore, the law that required the trial court to *sua sponte* give a limiting instruction, regardless of whether the Defendant requested such an instruction, mandated by ***Smith v. State***, 656 So.2d 95 (Miss. 1995), was still the law applicable to the trial court. The Supreme Court, until the ***Brown*** decision, had reversed some convictions based on the absence of the limiting instruction relying on the mandate in ***Smith***. ***Brown***, in plain language, overrules ***Smith*** and its progeny, and re-established the rule that the burden of seeking a Rule 404(b) limiting instruction was on defense counsel. As this area of the law has proven unsettled, the Defendant seeks to preserve this error in case this Court re-establishes the ***Smith*** or similar rule.

In essence, Rushing requests that we now engage in a "retroactive/prospective" discussion to determine whether ***Brown*** or ***Smith*** applies to his case; however, while we know what Rushing requests of us, he offers no citation to any authority, much less any relevant authority to undergird his position. We have repeatedly held that when a party on appeal raises an issue for us to consider but nonetheless fails to cite any authority to support his or her argument on this issue, we need not consider it. ***Byrom v. State***, 863 So.2d 836, 880 (Miss. 2003) (quoting ***Simmons v. State***, 805 So.2d 452, 487 (Miss. 2001) (citing ***Williams v. State***, 708 So.2d 1358, 1362-63 (Miss. 1998)). *See also* ***Brown v. State***, 798 So.2d 481, 494 (Miss. 2001); ***Evans v. State***, 725 So.2d 613, 691-92 (Miss. 1997). Accordingly, we decline Rushing's invitation to engage in a retroactive/prospective analysis to ascertain the applicability or inapplicability of ***Smith*** or ***Brown*** to his case. This issue is thus without merit.

24

## CONCLUSION

¶34.    For the foregoing reasons, the Lowndes County Circuit Court's judgment is affirmed.

¶35.    **CONVICTION OF THREE COUNTS OF PRESCRIPTION FORGERY AND SENTENCE OF TEN (10) YEARS FOR EACH COUNT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, PAY A FINE OF $1,000 FOR EACH COUNT AND ALL COSTS OF COURT FOR EACH COUNT,   AFFIRMED. SENTENCES SHALL RUN CONSECUTIVELY.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, DICKINSON AND RANDOLPH, JJ., CONCUR.   GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.  DIAZ, J., NOT PARTICIPATING.**