584 So.2d 769 (1991)
Wilton Wade CORLEY, Jr. a/k/a Bubba Corley
v.
STATE of Mississippi.
No. 07-KA-59449.
Supreme Court of Mississippi.
August 7, 1991.
*770 Thomas M. Flanagan, Jr., Lott Franklin Fonda & Flanagan, Greenwood, for appellant.
Mike C. Moore, Atty. Gen. and Deirdre McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and ROBERTSON and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court:
Wilton Wade Corley, a/k/a "Bubba", and his brother were indicted for burglary in 1986. The Corley brothers were tried in December, 1986, and Jimmy Ray O'Bannon testified against the Corleys. Arthur Crigler was subpoenaed to testify at the trial, but he was not called by the State.
The Corleys' trial resulted in a mistrial, and the case was set for a second trial in January 1987. Both Ray O'Bannon and Arthur Crigler were subpoenaed to testify in the second trial.
Around 9:30 a.m. approximately a week and a half before Corley's second trial, O'Bannon was walking near the post office in Sidon, Mississippi, when he was almost hit by a reddish-colored Ford pick-up truck. O'Bannon saw three males in the truck, and recognized the driver as Corley. Crigler's mother and sister saw this incident. O'Bannon then went to see his brother, who lived nearby.
A short time after O'Bannon's incident, Crigler, who happened to be at O'Bannon's brother's house, decided to leave. As he began to walk down the street, he, too, almost was hit by a reddish-colored truck. O'Bannon and his brother both saw this incident, and Crigler and O'Bannon identified Corley as the driver of truck which almost hit Crigler.
When the truck was gone, O'Bannon and Crigler went to a phone booth and called the sheriff's department. When the sheriff arrived, O'Bannon told him that Corley was driving the truck and two white males were riding with him.
Based on the two incidents, Corley was indicted on two counts of attempted assault. The State, later, reduced the charges to one multi-count indictment for attempting to intimidate a witness.
At trial, Corley denied knowing Crigler and knowing that Crigler had given information against him or intended to testify against him at the second trial. Corley also put on evidence showing that he had left town at approximately 8:30 a.m., the morning of the alleged incident to go fishing.
The jury found Corley guilty on both counts of attempting to intimidate a witness. Corley moved for a new trial or j.n.o.v., but the motion was denied. Corley was sentenced to two (2) years in the custody of the Mississippi Department of Corrections *771 on each count, with said sentences to run consecutively. Additionally, Corley was ordered to pay a fine of $500.00 on each count and court costs. Corley, proceeding in forma pauperis appeals the verdict and sentence raising three errors.

I.

WAS CORLEY DENIED HIS RIGHT TO A SPEEDY TRIAL PURSUANT TO MISS. CODE ANN. § 99-17-1?
The record shows that three hundred and forty-three (343) days elapsed between Corley's arraignment and trial. Our speedy trial statute requires that a defendant be brought to trial within 270 days after arraignment "unless good cause be shown, and a continuance duly granted by the Court." Miss. Code Ann. § 99-17-1 (Supp. 1990).
Corley's trial was delayed due to a continuance granted to Corley. Generally, delays in bringing a defendant to trial which are caused by continuances granted to a defendant toll the running of the 270 day period and are deducted from the total number of days between arraignment and trial. Flores v. State, 574 So.2d 1314, 1319 (Miss. 1990). Corley, however, argues that the continuance did not toll the running of the statutory period on his indictment for intimidating a witness because, due to an administrative error in transferring Corley's indictment from circuit court to county court, the continuance was not granted on the multi-count indictment for attempting to intimidate a witness, but on one of the prior aggravated assault charges that had been dismissed by the circuit court. Due to this error, Corley believes the period should not be tolled as he was not in any way responsible for the delay in the trial on his charge of attempting to intimidate a witness.
Corley relies on Turner v. State, 383 So.2d 489 (Miss. 1980), as support for his argument that an administrative error is not sufficient good cause to toll the running of the statute. In Turner, the trial court granted defendant's motion for a psychiatric examination, but the order was never entered on the court docket and was loosely placed in the court file. Turner, 383 So.2d at 490. Approximately nine and a half months later, a new request was filed and the order was entered. Id. By the time the report was returned, the 270 day statutory period had elapsed. Id. This Court found that the State had the responsibility of having a psychiatric examination made in compliance with the order, and the inaction of the State deprived the defendant of his constitutional right to a speedy trial. Id. at 491. We find Turner distinguishable from the instant case because in the instant case the State had no responsibility associated with carrying out either the order of transfer or the order granting a continuance.
In the instant case, the order of transfer was filed with all parties, as well as the circuit court, believing that the two indictments for aggravated assault had been dismissed and that the cause charging Corley with two counts of attempting to intimidate a witness had been transferred. Corley sought, and was granted, a continuance from county court while proceeding under the assumption that he was being charged with intimidating a witness. It was only when the error was discovered that Corley sought to have the continuance construed as applying to the previously dismissed indictments for aggravated assault.
We conclude that Corley did not believe when the cause was transferred to the county court that the transferred charge was for aggravated assault. We further find that Corley was responsible for the delay and that the State showed good cause for not bringing Corley to trial within 270 days. This argument has no merit.
Corley next argues that the time to begin the running of the 270 day period should have been the date of his arraignment on his first indictment because the indictment for aggravated assault and the later indictment for attempting to intimidate a witness arose out of the same transaction and occurrence. Even if Corley had been re-indicted on the same offense, the 270 day period would commence on the date of arraignment of the re-indictment. *772 See, e.g., Moore v. State, 556 So.2d 1031, 1033 (Miss. 1990). If, as Corley hypothetically suggests, the State attempts to circumvent the 270 day rule by dismissing an indictment and re-indicting a defendant on a separate charge arising out of the same facts and circumstances, we would reach that issue under the balancing test set out in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In this case the issue is moot as Corley does not suggest that the State re-indicted him to circumvent the 270 day rule and Corley limited this assignment to whether the 270 day rule was violated. We find no merit to this assignment of error.

II.

DID THE COUNTY COURT ERR BY FAILING TO SEVER THE TWO COUNTS FOR ATTEMPTING TO INTIMIDATE A WITNESS IN THE INDICTMENT AGAINST CORLEY?
The State charged Corley in a multi-count indictment with two counts of attempting to intimidate a witness. Corley filed a demurrer. At a pre-trial hearing, the county court concluded that the demurrer was untimely filed, and alternatively the multi-count indictment was proper because there was a common scheme or plan and Corley would not be prejudiced by trying the two offenses in one trial.
Historically, this Court prohibited multi-count indictments until 1986 when the Legislature adopted a multi-count indictment statute which this Court later adopted. McCarty v. State, 554 So.2d 909, 914 (Miss. 1989). In allowing a multi-count indictment, this Court agreed with the Legislature that the offenses must be based on the same act or transaction, or be based on two or more acts or transactions, connected together or constituting parts of a common scheme or plan. McCarty, 554 So.2d at 914-916; see also, Miss. Code Ann. § 99-7-2 (Supp. 1990). We have been, and remain, unwilling to allow separate and distinct offenses to be tried in the same criminal proceeding. We do so in order to avoid potential problems of a jury finding a defendant guilty on one unproven count due to proof of guilt on another, or convicting a defendant based upon the weight of the charged offenses, or upon the cumulative effect of the evidence. See generally, Gray v. State, 549 So.2d 1316, 1322 [citing U.S. v. Foutz, 540 F.2d 733, 738, n. 5 (4th Cir.1976) and 2 W. LaFave and J. Israel, Criminal Procedure § 17.1(b) at 354-55 (1984)].
When a defendant raises the issue of severance, we recommend that a trial court hold a hearing on the issue. The State, then, has the burden of making a prima facie case showing that the offenses charged fall within the language of the statute allowing multi-count indictments. If the State meets its burden, a defendant may rebut by showing that the offenses were separate and distinct acts or transactions. In making its determination regarding severance, the trial court should pay particular attention to whether the time period between the occurrences is insignificant, whether the evidence proving each count would be admissible to prove each of the other counts,[1] and whether the crimes are interwoven. See Allman v. State, 571 So.2d 244, 248 (Miss. 1990); McCarty, 554 So.2d at 914-916.
If a trial court follows this procedure, this Court will review the trial court's decision under the abuse of discretion standard giving due deference to the trial court's findings. McCarty, 554 So.2d at 916. On review, we will defer to the trial court's findings even if the jury later acquits the defendant on one or more counts or if this Court concludes on appeal that a directed verdict, j.n.o.v. or new trial should have been granted on one or more counts.[2]
*773 Upon reviewing the record, we believe that the evidence was close on whether Corley's acts against O'Bannon and Crigler constituted a common scheme or plan. However, we cannot conclude that the trial court abused its discretion, and therefore, we give deference to the lower court's decision. This assignment of error has no merit.

III.

WAS THE VERDICT AS TO COUNT I AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
Corley argues that the jury's finding that Corley attempted to intimidate Arthur Crigler, a witness, was against the overwhelming weight of the evidence. Corley contends that the State did not prove beyond a reasonable doubt that Corley knew Crigler or that he knew Crigler was going to be a witness against him. Additionally, Corley contends that Crigler had not yet been subpoenaed to be a witness in the second trial, so if the offense did occur, Crigler was not at that time a witness against Corley.
This Court recognizes that a motion for a new trial is discretionary with the trial judge, and we will not order a new trial unless the verdict is so contrary to the overwhelming weight of the evidence that to allow the verdict to stand would sanction an unconscionable injustice. Lane v. State, 562 So.2d 1235, 1236-37 (Miss. 1990). We view all of the evidence in the light most consistent with the verdict and we give the State all favorable inferences which may be drawn from the evidence. Benson v. State, 551 So.2d 188, 192-93 (Miss. 1989).
After reviewing the evidence in light of this standard, we agree with Corley. The evidence does not support a finding that Corley knew that Crigler was a witness at the first trial or Crigler would be a witness at the second trial. It is possible that Corley could have seen Crigler at the courthouse during Corley's first trial, but we find this insufficient to show that from this one possible sighting Corley could have concluded that Crigler would testify against him at Corley's second trial. Based on the evidence, we reverse the jury's verdict as to Count I of the indictment.
Having reviewed the record, we affirm the verdict and sentence as to Count II of the indictment and reverse the verdict as to Count I. The two (2) year sentence and $500.00 fine assessed to Corley on Count I are accordingly dismissed.
COUNT I: REVERSED AND RENDERED. COUNT II: CONVICTION OF INTIMIDATING A WITNESS AND SENTENCE OF TWO (2) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAYMENT OF A FINE OF $500.00 AFFIRMED.
AFFIRMED IN PART; REVERSED AND RENDERED IN PART.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON and McRAE, JJ., concur.
HAWKINS, P.J., concurs in part and dissents in part by separate written opinion joined by DAN M. LEE, P.J.
BANKS, J., concurs in part and dissents in part by separate written opinion joined by PITTMAN and McRAE, JJ.
HAWKINS, Presiding Justice, concurring in part and dissenting in part:
I concur in the result reached in this case, but dissent as to the following language:
Historically, this Court prohibited multi-count indictments until 1986 when the Legislature adopted a multi-count indictment statute, which this Court, later, adopted. McCarty v. State, 554 So.2d 909, 914 (Miss. 1989). In allowing a multi-count indictment, this Court agreed with the Legislature that the offenses *774 must be based on the same act or transactions... . (Emphasis added)
(Majority Opinion, p. 772)
It will be well to examine the ramifications of this pronouncement. It is not a slip of the tongue. This language, as in Hall v. State, 539 So.2d 1338 (Miss. 1989), informs the Legislature that it is we who have the sole authority to prescribe laws dealing with criminal practice in State courts.

MULTI-COUNT INDICTMENTS
By 1986 Miss. Laws Ch. 444, the Legislature adopted the multi-count indictment statute, Miss. Code Ann. § 99-7-2. Until then, and precisely because no statute authorized them, multi-count indictments were condemned by this Court. Thomas v. State, 474 So.2d 604 (Miss. 1985); Stinson v. State, 443 So.2d 869 (Miss. 1983). After the passage of the Act, and solely because this statute authorized them, this Court approved multi-count indictments in criminal prosecutions. The first paragraph of the Act makes abundantly clear circumstances in which this State (and most other states and the federal courts already had done so; Stinson, 443 So.2d at 873.) authorizes multi-count indictments:
(1) Two (2) or more offenses which are triable in the same court may be charged in the same indictment with a separate count for each offense if: (a) the offenses are based on the same act or transaction; or (b) the offenses are based on two or more acts or transactions connected together or constituting part of a common scheme or plan.
Following enactment of Miss. Code Ann. § 99-7-2, the first case in which we addressed multi-count indictments was Woodward v. State, 533 So.2d 418 (Miss. 1988), cert. denied, Woodward v. Mississippi, 490 U.S. 1028, 109 S.Ct. 1767, 104 L.Ed.2d 202 (1989). Speaking for the Court, Justice Prather announced that although this Court had historically disapproved a "single multiple count indictment":
The Legislature has now addressed the use of the single indictment containing multi-counts, and it has stated that as a matter of state policy no objections may be validly raised to an indictment containing multi-counts if the statute is otherwise followed. Thus, this Court holds that there is no error in the State's charging of three felony counts within a single indictment since this indictment was returned after the effective date of the statute and followed its dictates. (Emphasis added)
Id. at 422.
Of course, the reason this Court had previously disapproved multi-count indictments was that no statute authorizd it. Stinson. Closely following was Estes v. State, 533 So.2d 437, 439 (Miss. 1988), in which Justice Sullivan, speaking for the Court, answered the complaint that the accused had been tried under a multi-count indictment:
The cases cited by the defendants all pre-date the passage of the statute. We are of the opinion that there is no merit to this assignment of error.
Id. at 439.
In Brown v. State, 534 So.2d 1019 (Miss. 1988), cert. denied, Brown v. Mississippi, 490 U.S. 1007, 109 S.Ct. 1643, 104 L.Ed.2d 158 (1989), Justice Griffin, speaking for the Court, answered the complaint that the accused had been tried under a multi-count indictment:
Appellant, Brown, was charged in a multi-count indictment on May 9, 1986. At that time there was no statute in effect allowing this type of indictment. Appellant filed a demurrer to the indictment, citing Stinson v. State, 443 So.2d 869 (Miss. 1983); Bennett v. State, 451 So.2d 727 (Miss. 1984); Johnson v. State, 452 So.2d 850 (Miss. 1984); Friday v. State, 462 So.2d 336 (Miss. 1985); Thomas v. State, 474 So.2d 604 (Miss. 1985). This demurrer was over-ruled. (Emphasis added)
On July 1, 1986, § 99-7-2 Miss. Code Ann. (Supp. 1986) went into effect. This statute states: [statute quoted].
Id. at 1021-1022. And that was that.
Again, in Gray v. State, 549 So.2d 1316, 1321-1322 (Miss. 1989), Justice Prather, speaking for the Court, addressed plain *775 error in joining eight counts in a single indictment which did not meet the standards of Miss. Code Ann. § 99-7-2. There it was pointed out that although the statute permitted such joinder, it must meet the statute and Constitutional safeguards designed to protect the accused. That indictment did not, and we reversed.
In none of these cases did this Court so much as hint that we "allowed" the Legislature to pass the statute. The Legislature enacted it; we enforced it.
In Blanks v. State, 542 So.2d 222 (Miss. 1989), the oversight was rectified when Justice Robertson, speaking for this Court, stated about the Act:
This statute, although addressing a matter of practice and procedure in criminal prosecutions, has been accepted and enforced by this Court. [Citing Brown, Estes, Woodward, supra] See also McClendon v. State, 539 So.2d 1375, 1377 n. 2 (Miss. 1989). (Emphasis added)
Id. at 225.
And what does note 2 in McClendon, a case written by Justice Robertson dealing with the Mississippi Post-Conviction Collateral Relief Act, state?
It has been suggested that the Mississippi Uniform Post-Conviction Collateral Relief Act arguably represents an invasion of this Court's rule making power. See Hall v. State, 539 So.2d 1338 (Miss. 1989); ... The provisions of the act relevant to today's proceeding enjoy enforceability, not because of any legal validity conferred upon them by the legislature but because we have adopted them in prior proceedings before this Court. (Emphasis added)
539 So.2d at 1377, n. 2.
Thereafter, in McCarty v. State, 554 So.2d 909, 913 (Miss. 1989), Justice Anderson, speaking for this Court concerning the statute, parroted Blanks:
The Legislature adopted this statute as a matter of public policy and although it addressed a matter of practice and procedure in criminal prosecutions this Court accepted it and enforced it. [Citing Blanks as well as other cases which did not support the statement.] But cf. Hall v. State, 539 So.2d 1338 (Miss. 1989). ... Hence, this statute enjoys enforceability, "not because of any legal validity conferred upon them by the legislature, but because we have adopted them in prior proceedings before this Court. McClendon v. State, 539 So.2d 1375, 1377 n. 2 (Miss. 1989). (Emphasis added)
McCarty, 554 So.2d at 914.
So, not only has the Legislature of this State no authority (unless approved by this Court) to (1) enact statutes dealing with criminal practice and procedure, it has no authority to (2) pass valid statutes dealing with the pleadings and procedure which should be necessary for a convict in the penitentiary to get out. Miss. Code Ann. § 99-39-1, et seq. (Supp. 1990), 1984 Miss. Laws Ch. 378. This authority is vested solely in this Court.
The legislative function is simply to funnel this Court with ideas and suggestions in the form of statutes which we are free to reject or, if they happen to be good ideas, to "accept" or "allow."
It is thus abundantly clear that this Court intends to pursue and broaden its assertion of power, not only as to the Legislature's authority to (1) pass an evidentiary statute in a criminal case as it did in Hall, but also (2) in any type of indictment, Miss.Code. Ann. § 99-7-2, and (3) any type of procedure or practice involving efforts by those in the penitentiary to get out.

WHAT TO DO TO GET OUT OF THE PENITENTIARY
Insofar as criminal cases are concerned, the legitimate authority of any court of this State ends when there has been no appeal from the trial court conviction, or when this Court finally affirms a judgment of conviction on appeal. Once a criminal accused has been convicted in a court of law and all appeals exhausted, all court jurisdiction of the case terminates. Only the Governor has the authority under the Constitution "to grant reprieves or pardons." Miss. Const. Art. 5, § 124. Whittington v. Stevens, 221 Miss. 598, 73 So.2d 137 (1954).
*776 The only possible way in which this Court can have any lawful authority, after a criminal prosecution has been finally concluded, to again  and collaterally  examine the validity of a criminal conviction, is by some special statute authorizing us to do so. Smith v. State, 155 So.2d 494 (Miss. 1963); 1952 Miss. Laws Ch. 250; Miss. Code Ann. § 1992.5 (1942); Miss. Code Ann. § 99-35-145 (1972), repealed by 1984 Miss. Laws Ch. 378, eff. from and after April 17, 1984; Miss. Code Ann. § 99-39-1, et seq., (Supp. 1990); Mississippi Uniform Post-Conviction Collateral Relief Act. In the absence of Legislative enactment giving this Court authority to collaterally review a terminated criminal case, we have none. Yet, as above noted, in McClendon and McCarty the membership of this Court intrepidly held that it is this Court, and this Court only, which determines the laws whereby a convict in the state penitentiary stays or gets out. The ground rules the Legislature sets for determining whether or not a convicted felon is entitled to relief are of no validity unless this Court "allows" or "accepts" them.
This Act, Miss. Code Ann. § 99-39-1, et seq., covers twelve pages in the Code Supplement. According to this Court, they are no more than trash paper in the absence of our approval.[1]
It is perfectly plain to me that the legislature has the absolute power and authority to pass statutes dealing with criminal practice and procedure, and need not look to this Court for permission to pass any such statute. Furthermore, so long as any statute they pass meets constitutional muster insofar as protecting the rights of the accused, it is none of this Court's business, except to enforce the statute.
It is a blatant usurpation to even intimate that we have some kind of supervisory power over the Legislature in matters as these, or that any such law they pass cannot be enforced without this Court "allowing" or "accepting" it.
I have had my say about this Court usurping power it does not have in Hall and its progeny. Hawkins, P.J., dissenting from adoption of Evidentiary Rules, 575 So.2d LXXXIX (Miss. 1991); In Interest of C.B., 574 So.2d 1369, 1375 (Miss. 1990) (Hawkins, P.J., dissenting); Lambert v. State, 574 So.2d 573, 579 (Miss. 1990) (Hawkins, P.J., dissenting); Leatherwood v. State, 548 So.2d 389, 406 (Miss. 1989) (Hawkins, P.J., dissenting); Mitchell v. State, 539 So.2d 1366, 1374 (Miss. 1989) (Hawkins, P.J., dissenting). I do not care to repeat any of it now. What I would suggest as fairly respectable criticism has already been directed at Hall. "In the absence of the repeal of section 90(s) of the Mississippi Constitution, the court cannot constitutionally justify its assumption of exclusive rule-making authority." Comment, The Limits of the Mississippi Supreme Court's Rule-Making Authority, 60 Miss.L.J. 359, 385 (1990).
The lesson of today's majority and McClendon, McCarty and Blanks is that this Court has no intention to retreat from its position in Hall, but indeed to broaden it.[2]
DAN M. LEE, P.J., joins this opinion.
*777 BANKS, Justice, concurring in part, dissenting in part:
I concur in all that the majority holds except its reversal of the conviction on Count I. As to that issue, with deference, I dissent.
The question is whether there was sufficienct evidence in the record to allow a fair-minded jury to conclude beyond a reasonable doubt that Corley knew that Crigler was a witness against him. Wetz v. State, 503 So.2d 803, 807 (Miss. 1987). While it is true that Crigler had not testified in the first trial, in my view, there is ample evidence to support the conclusion that Corley knew that he was a witness against him and that this fact motivated the assault.
First, Crigler was subpoenaed to testify against Corley. Subpoenas are a matter of public record. More importantly, however, Corley admits that he had access to and went over the list of witnesses subpoenaed to testify against him. He does state that there were about four names of people who were unknown to him and denies specific recollection of the name Crigler. Crigler had given a statement against Corley. Corley's testimony concerning access to that statement is not clear.[1] He admits knowing that O'Bannon had given information but contended that "I don't remember the Crigler name, at that time."
Crigler testified that Corley saw him coming into the courthouse and walk up the stairs at the first trial. Corley denied seeing Crigler. Crigler testified that Corley probably knew him from the community by face but not by name. It is no great stretch to infer that upon seeing Crigler, Corley, either alone or with others, was able to put the name with the face, Corley's testimony to the contrary notwithstanding. Crigler also testified that, but for his status as a witness against him, Corley had no reason to assault him. No other reason is suggested by the evidence.
In sum, Corley had ample opportunity to know that Crigler was a witness against him. As the state argued to the jury, it boggles the imagination that in preparing for his burglary trial, Corley did not bother to find out who the witnesses against him were. Moreover, the absence of any other reason for the assault aids the inference that Corley knew that Crigler was a witness. It is an inference that the jury was capable of drawing. I would affirm.
PITTMAN and McRAE, JJ., join this opinion.
NOTES
[1] We recognize that if the trial court finds that the offenses stem from separate and distinct acts or transactions, in some cases the State still may be allowed to introduce evidence of the other offense(s) under Rule 404(b), M.R.E. Whether the evidence would be admissible under this rule has no bearing on whether the trial court should allow a multi count indictment.
[2] Additionally, if the trial court denies a motion for a severance or a motion is not made, we recommend that the trial court caution the jury that although the case before the jury involves charges of more than one offense, proof of guilt on one count is not proof of guilt on the other(s).
[1] In a series of recent cases, Neal v. State, 525 So.2d 1279 (Miss. 1987); Billiot v. State, 515 So.2d 1234 (Miss. 1987); and Myers v. State, 583 So.2d 174 (Miss. 1991), this Court has taken upon itself to broaden the already liberal guideline of Miss. Code Ann. § 99-39-11 (Supp. 1990) of the Post-Conviction Relief Act by analogizing it to a petition for relief thereunder to a Rule 12(b)(6) Miss.R.Civ.P. motion to dismiss a civil complaint. Neal, 525 So.2d at 1280; Billiot, 515 So.2d at 1236. I wondered at the rationale of the Court's doing so in Myers v. State, see Hawkins, P.J., specially concurring. What authority could we have for translating an already broad guideline to the virtual infinite?

The pattern is now clear. In these cases this Court was not limited to the judicial construction of the statute, seeking a "Legislative-intent," but instead interpreting what in effect was one of this Court's "rules," which we are were free to say meant whatever we pleased.
[2] Three decisions from this Court no doubt pleased and relieved the legislative leadership. State Ex Rel. Moore v. Molpus, 578 So.2d 624 (1991); Burrell v. Mississippi State Tax Commission, 536 So.2d 848 (1988); Dye v. State Ex Rel. Hale, 507 So.2d 332 (1987). There can be no entente cordiale, however, between separate branches of government, at least of any permanency.
[1] The record does not reflect whether the state had disclosed Crigler's statement in discovery. The record also fails to reflect whether the potential witnesses were identified in the voir dire and opening statements at the first burglary trial. One would normally expect this to have happened. Without a record, however, neither the jury nor this court may assume that it did in fact occur.