BARNES, J.,
 

 for the Court.
 

 ¶ 1. In the Clay County Circuit Court, a jury found Lasharis T. Alford guilty of murder and possession of a firearm as a previously convicted felon. The circuit court established that Alford was a habitual offender and sentenced him to life imprisonment in the Mississippi Department of Corrections (MDOC) without the possibility of parole for the murder conviction and to three years in the custody of the MDOC for the possession of a firearm conviction to run consecutively to the murder sentence.
 

 SUMMARY OF FACTS AND PROCEDURAL HISTORY
 

 ¶2. On the early evening of June 23, 2006, the victim, Demarcus Johnson, also known as “Sonny Jack,” was at the Cock-rell store, a local hangout, in the Mantee community of Clay County. There was still some daylight; Johnson was speaking to friends about picking his little girl up; and the “vibe was all good.” Alford, nicknamed “Pookie Dog,” arrived at Cockrell’s after Johnson. He drove up “spinning ... just driving ... crazy” and acting very angry at someone or something. It became apparent that Alford’s “tirade” was directed against Johnson. Alford and Johnson were known to be former friends. Johnson and others tried to ignore Alford. Johnson eventually left Cockrell’s with a friend and drove to another hangout, Mosley Grocery, which was just down the road. Mosley’s contained a pool hall and a kitchen from which to order food.
 

 ¶ 3. Alford followed Johnson and arrived in the parking lot at Mosley’s shortly after Johnson. Alford was still in “angry rage mode” and was seen standing a few feet in front of Johnson’s vehicle, while Johnson sat on the hood of his car smoking a 'cigarette. One witness stated the two men “exchanged words.” Alford, who appeared very upset, was overheard making comments to the effect that Johnson should “stay in his league.” Challenging Johnson, .Alford told him that he was “the type of dude [who would] shoot you in the face.” Johnson did not appear to be provoked by Alford or take him seriously. Calling Alford’s supposed bluff, Johnson replied, “well, shoot me then,” and pointed a finger to his temple. Several gunshots then rang out. Three eyewitnesses testified they saw Alford pull a stainless steel pistol from the back of his shirt and shoot Johnson in the face. Johnson appeared to be un
 
 *1140
 
 armed and did not have time to react in self-defense against Alford. Alford walked around Johnson’s prostrate body, went into Mosley’s, ordered a beer, and then left the scene.
 

 ¶ 4. A Clay County grand jury returned a two-count indictment against Alford. Count one charged Alford with murder pursuant to Mississippi Code Annotated section 97-3-19 (Rev.2006). Count two charged Alford with unlawful possession of a firearm as a prior convicted felon pursuant to Mississippi Code Annotated section 97-37-5 (Rev.2006). Both counts of the indictment noted Alford had been twice previously convicted of aggravated assault, in 1998 and 1999. For those prior offenses, Alford had been sentenced to five years and one year, respectively, in the custody of the MDOC.
 

 ¶ 5. On January 16, 2007, the defense filed a motion to sever counts one and two of the indictment, which was denied. Also on this day, a two-day jury trial commenced. In its case-in-chief, the State called seven witnesses, three of whom were eyewitnesses in close proximity to the shooting. All of the eyewitnesses testified to the same sequence of events, as stated above, leading up to the shooting. Additionally, the owner of Mosley’s testified that while she was not an eyewitness to the shooting since she was inside Mosley’s at the time, she heard the shots fired. When Alford entered Mosley’s for a beer, she asked him what he had done. Alford responded that he had shot “Sonny Jack.”
 

 ¶ 6. Dr. Steven Hayne, who was qualified as an expert in forensic pathology, testified for the State as to the manner and cause of Johnson’s death. An autopsy revealed four gunshot wounds to Johnson’s body: two to the head, one to the forearm, and one to the thigh. The first gunshot wound to the head was lethal; the wound to Johnson’s forearm was indicative of defensive posturing. Dr. Hayne deemed the manner of death as a homicide.
 

 ¶ 7. Also testifying for the State was Eddie Scott, an investigator with the Clay County Sheriffs Department. Scott secured the crime scene after the shooting and retrieved three empty shell casings from a .9 millimeter automatic weapon. Later that evening, law enforcement officials were able to locate Alford’s vehicle in nearby Pheba, Mississippi. A search of the vehicle resulted in finding a stainless steel weapon on the floorboard. The weapon, which held a total of ten rounds, contained six bullets. Byron Mclntire, an expert in the field of firearm identification and comparison, testified that he performed a comparison test of some of the shell casings found at the scene and determined they were fired from the weapon found in Alford’s vehicle. Additionally, Mclntire testified that a comparison test of two of the bullets retrieved from Johnson’s body, which were relatively intact and not mutilated, also resulted in the conclusion that they were fired from the weapon found in Alford’s vehicle.
 

 ¶ 8. After the State’s case-in-chief concluded, the defense moved for a directed verdict, which was denied. The defense then rested without calling any witnesses to the stand. The jury returned a verdict of guilty as to both counts one and two of the indictment. Alford was deemed a habitual offender pursuant to Mississippi Code Annotated section 99-19-81 (Rev. 2007), having been twice convicted and sentenced for one year or more for aggravated assault stemming from two separate shooting incidents. The circuit court judge sentenced Alford to life imprisonment without the possibility of parole for the murder charge and three years without the possibility of parole for the possession of a firearm by felon charge, with the sentences to run consecutively. Alford
 
 *1141
 
 filed a post-trial motion for a judgment notwithstanding the verdict or, alternatively, for a new trial, which was denied. Alford now appeals his conviction, raising two issues.
 

 DISCUSSION OF THE ISSUES
 

 I. Whether the circuit court erred in denying Alford’s motion for severance.
 

 ¶ 9. Alford contends that the circuit court judge improperly denied his motion for a severance of the two counts in his indictment. Alford claims that count two was a separate and distinct offense from the murder charge. Further, because count two was a possession of a firearm by a prior convicted felon charge, Alford argues he was prejudiced, and his right to a fair trial was violated because the jury heard evidence he was a prior convicted felon.
 

 ¶ 10. The Mississippi Code provides for multi-count indictments and trials in the following situations:
 

 (1) Two (2) or more offenses which are triable in the same court may be charged in the same indictment with a separate count for each offense if: (a) the offenses are based on the same act or transaction; or (b) the offenses are based on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan. (2) Where two (2) or more offenses are properly charged in separate counts of a single indictment, all such charges may be tried in a single proceeding.
 

 Miss.Code Ann. § 99-7-2(1) and (2) (Rev. 2007). The Mississippi Supreme Court has delineated the following procedure for motions to sever offenses: “[W]e recommend that a trial court hold a hearing on the issue. The State, then, has the burden of making a prima facie case showing that the offenses charged fall within the language of the statute allowing multi-count indictments. If the State meets its burden, a defendant may rebut by showing that the offenses were separate and distinct acts or transactions.”
 
 Corley v. State,
 
 584 So.2d 769, 772 (Miss.1991). Factors the trial court should analyze in making its decision on whether a multi-count trial is proper are: (1) the time period between the offenses, (2) whether the evidence proving each count would be admissible to prove each of the other counts, and (3) whether the crimes are interwoven. If the correct procedure is followed, this Court gives deference to the trial court’s findings, utilizing an abuse of discretion standard of review.
 
 Id.
 
 (citing
 
 McCarty v. State,
 
 554 So.2d 909, 916 (Miss. 1989)).
 

 ¶ 11. Reviewing the transcript on the motion to sever, we find the circuit court utilized the correct procedure and properly analyzed the
 
 Corley
 
 factors. The day of the trial, after the jury was empaneled, the circuit court judge held a hearing on the defense’s motion to sever. The circuit court judge applied the three
 
 Corley
 
 factors and found the State met its burden of showing that the charged offenses fell within the language of section 99-7-2. Specifically, the judge stated:
 

 Looking at the three requirements that I must look at under
 
 Corley versus State
 
 ... the two alleged felonies occurred essentially at or around the same time. So, that factor favors that they be tried together.
 

 The evidence proving each count would be admissible to prove each of the other counts. Well, once again, it looks like the same evidence to show that he had the gun with the exception of probably one additional witness to show that he had a prior felony conviction also would come in.
 

 
 *1142
 
 And whether the crimes are interwoven. Well, the State alleges that the firearm that he’s indicted for is the one that he used to kill Mr. Johnson. Accordingly ... the Court finds that they are capable of being tried together and should be tried together.
 

 We find this analysis clearly sufficient under
 
 Corley.
 

 ¶ 12. We are not persuaded by Alford’s argument that he was prejudiced by the admission of his prior conviction and, therefore, denied a fair trial. At trial, one of Alford’s prior felony convictions for aggravated assault was entered into evidence, only to prove the charge of possession of a-firearm by a convicted felon, not to prove a propensity for murder. At the end of trial, the jury was clearly instructed of the singular purpose of the evidence of Alford’s prior felony conviction.
 

 ¶ 13. Accordingly, for the above reasons, we find the circuit court did not abuse its discretion in denying the defense's motion to sever.
 

 II. Whether the circuit court erred in refusing Alford’s manslaughter instructions.
 

 ¶ 14. Next, Alford argues the circuit court should have granted his jury instructions on manslaughter. At trial, Alford offered two jury instructions, D-5 and D-6, on the lesser-included offense of heat-of-passion manslaughter as an alternative to murder. The circuit court judge refused to grant the instructions.
 

 ¶ 15. In reviewing jury instructions, this Court must read them as a whole; no one instruction should be taken out of context.
 
 Agnew v. State,
 
 783 So.2d 699, 702(¶ 6) (Miss.2001) (citing
 
 Humphrey v. State,
 
 759 So.2d 368, 380(¶33) (Miss. 2000)). It is well established that regarding lesser-included offense instructions, they “should be given if there is an eviden-tiary basis in the record that would permit a jury rationally to find the defendant guilty of the lesser offense and to acquit him of the greater offense.”
 
 Sanders v. State,
 
 781 So.2d 114, 119(¶ 16) (Miss.2001) (quoting
 
 Welch v. State,
 
 566 So.2d 680, 684 (Miss.1990)). The test for determining whether a lesser-included-offense instruction should be submitted to the jury is as follows:
 

 A lesser-included-offense instruction should be granted unless the trial judge and ultimately this Court can say, taking the evidence in the light most favorable to the accused and considering all the reasonable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser-included offense (conversely, not guilty of at least one element of the principal charge).
 

 Id.
 
 (citing
 
 McGowan v. State,
 
 541 So.2d 1027, 1028 (Miss.1989)). However, the supreme court has repeatedly maintained that jury instructions on lesser-included offenses should not be indiscriminately granted but should be submitted to the jury only when there is an evidentiary basis in the record.
 
 Id.
 
 (citing
 
 Lee v. State,
 
 469 So.2d 1225, 1230 (Miss.1985)).
 

 ¶ 16. Regarding the elements that must be present in the evidence to warrant the instruction, the Mississippi Code defines manslaughter as: “[t]he killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense.... ” Miss.Code Ann. § 97-3-35 (Rev.2006). “Heat of passion” has been defined as “[a] state of violent and uncontrollable rage engendered by a blow or certain other provocation given.... Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by
 
 *1143
 
 anger, rage, hatred, furious resentment or terror” and “would produce in the minds of ordinary men ‘the highest degree of exasperation.’”
 
 Phillips v. State,
 
 794 So.2d 1034, 1037 (¶¶ 9-10) (Miss.2001) (citations omitted). Importantly, words alone, even if provocative, or disagreements between people are insufficient to satisfy the “heat of passion” requirement and, thus, “reduce an intentional and unjustifiable homicide from murder to manslaughter.”
 
 Id.
 
 at (¶ 10) (quoting
 
 Gates v. State,
 
 484 So.2d 1002, 1005 (Miss.1986)).
 

 ¶ 17. Alford contends that while testimony shows he and Johnson merely had “words” with one another, the jury could infer that there was an earlier altercation between the two men which aroused “heat of passion” in Alford. However, our examination of the record presents no evidence of sudden provocation between Alford and Johnson on the night at issue. According to all of the eyewitnesses, Alford was the angry person, and Johnson initially tried to remove himself from a confrontation with Alford by driving with a friend from Cockrell’s to Mosley’s. In the parking lot of Mosley’s, there was, at the most, evidence of mere “words” exchanged, but no heated argument or blows. However, even if there were provocative words exchanged, of which we find no evidence, such words are insufficient evidence of heat of passion. Furthermore, even if a past argument could be inferred between the two men to explain Alford’s animosity toward Johnson, as the defense suggests, this is also insufficient to satisfy the heat-of-passion element of manslaughter, as the provocation must be immediate — that is, occurring at the time of the killing. Even considering this possibility, none of Johnson’s friends could speculate on what might have caused the animosity, as the two men were formerly friends.
 

 ¶ 18. Consequently, we find no evidence in the record from which the jury could have determined the killing occurred during heat of passion. Accordingly, we conclude the trial court did not err in refusing to give a manslaughter jury instruction.
 

 CONCLUSION
 

 ¶ 19. The circuit court did not err in denying Alford’s motion to sever the two counts of his indictment at trial. The court followed the correct procedure to determine the propriety of severance according to
 
 Corley.
 
 We find Alford was not prejudiced by the admission of his prior convictions as they were used for the limited purpose of proving he was a twice-prior convicted felon. Additionally, the circuit court did not err in its denial of Alford’s manslaughter jury instructions, as there was insufficient evidence in the record to support the elements of manslaughter. Alford’s convictions and sentences are affirmed.
 

 ¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF CLAY COUNTY OF THE CONVICTION OF COUNT I, MURDER, AND SENTENCE OF LIFE IMPRISONMENT AND COUNT II, POSSESSION OF A FIREARM BY A FELON, AND SENTENCE OF THREE YEARS, WITH SENTENCES IN COUNTS I AND II TO RUN CONSECUTIVELY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS A HABITUAL OFFENDER WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO CLAY COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.