GRIFFIS, P.J.,
for the Court:
¶ 1. Janice Stribling was convicted in the Neshoba County Circuit Court of three counts of selling cocaine. On appeal, she argues that: (1) the trial judge erred when he allowed the State to play only parts of surreptitious video recordings of the cocaine sales for the jury instead of the entire recordings; (2) the trial judge erred when he refused to instruct the jury to take the testimony of a confidential informant with “great care and caution” and to “look upon it with distrust and suspicion”; (8) the State wrongfully tried her on a multi-count indictment for separate and distinct offenses; and (4) there was insufficient evidence to support her conviction or, alternatively, that the jury’s verdict is against the overwhelming weight of the evidence. We find no error and affirm.
FACTS
¶ 2. In 2007, a confidential informant named Barry Battle worked with officers from the Mississippi Bureau of Narcotics (MBN) and the Neshoba County Sheriffs Office in a sting operation. Battle made three separate purchases of crack cocaine from Stribling in Philadelphia, Mississippi.
¶ 3. Officer James Gregory of the MBN testified that Battle received $100 for every purchase he made from a drug dealer. According to Battle, by the time he participated in the sting against Stribling, he had served as an informant for eleven years.
¶ 4. Officer Gregory testified that on January 18, 2007, he and Deputy Sheriff Grant Myers met with Battle in Philadelphia to arrange a drug purchase from Stri-bling. At the “pre-buy meeting,” pursuant to standard procedure, Officer Gregory and Deputy Myers searched Battle’s person and car to ensure that he did not already possess drugs. The purpose of such a search was to provide greater confidence that any drugs returned to them by Battle after the purchase were obtained from Stribling.
¶ 5. There was conflicting testimony about the thoroughness of the search. On cross-examination, Officer Gregory admitted that he did not search Battle’s under *1158 wear, shoes, socks, or bodily orifices. Also, when asked to list the parts of Battle’s car that were searched, Officer Gregory failed to mention the ash tray, and he further admitted that he did not search the car’s hubcaps. In contrast, Battle testified that: Officer Gregory did search his shoes and socks; he “felt of’ his underwear and orifices; and he did search the car’s ashtray. Battle confirmed that Officer Gregory did not search the car’s hubcaps.
¶ 6. Following the search, Officer Gregory and Deputy Myers equipped Battle with an audiovisual recording device so that the transaction could be recorded. They also equipped him with a live audio transmitter so that they could simultaneously monitor the events as they occurred. They then gave Battle money to make the purchase and sent him on the buy. Battle was alone in his car as he drove from the pre-buy meeting to the purchase site.
¶ 7. Officer Gregory testified that he and Deputy Myers followed Battle in their own car, but they could not get too close or they would jeopardize the operation and Battle’s safety. Officer Gregory admitted on cross-examination that he often lost sight of Battle while Battle was en route to the purchase site. Officer Gregory further admitted that, during the purchase, he and Deputy Myers were parked across the street and did not have a line of sight to the purchase location. Officer Gregory testified that the live audio feed was of poor quality and that it was often impossible to tell who was speaking or what was said.
¶ 8. The January 18th audiovisual recording starts at the pre-buy meeting just as Battle gets in his car to drive to the purchase site. During the drive, the camera is pointed toward Battle’s glove compartment. The viewer cannot see Battle. Various noises can be heard, including Battle’s car stereo, but none of the noises seem important or unusual. Battle arrives at the purchase site, which he later identified in his testimony as a mobile home at Southside Trailer Park in Philadelphia. A woman, who Battle later identified as Stri-bling, approaches the driver-side window of his car. She asks, “What you want?” Battle responds, “Oh, forty.” He then enters the mobile home where he stands around while Stribling goes into another room and shuts the door. She emerges a few moments later and puts three or four small objects on the kitchen counter. It appears that Battle then takes possession of the objects and hands Stribling cash. Battle then leaves the mobile home and meets with Officer Gregory and Deputy Myers.
¶ 9. Officer Gregory testified that Battle returned from the purchase site with what appeared to be three rocks of crack cocaine. The crime laboratory later confirmed that the rocks contained .81 gram of cocaine base.
¶ 10. According to Officer Gregory and Battle, this same procedure was followed on January 25, 2007, and on March 29, 2007. According to them, on both of those occasions, Battle purchased what appeared to be crack cocaine from Stribling.
¶ 11. The January 25th audiovisual recording starts as Battle leaves the pre-buy meeting. During the drive to the purchase site, the camera is pointed at Battle’s gearshift. The viewer cannot see Battle. All that can be heard are road noises and Battle’s car stereo. Battle arrives at the purchase site and enters a mobile home, which he later identified as the same mobile home from the January 18th purchase. He tells Stribling, “I need a four-zero.” She makes a phone call and then leaves the mobile home for a while. She returns a few moments later and places three or four small objects on the kitchen counter. It appears Battle takes *1159 possession of the objects and hands her cash.
¶ 12. The March 29th audiovisual recording starts as Battle leaves the pre-buy meeting. During the drive to the purchase site, the camera is again pointed at the car’s glove compartment, and nothing important is seen or heard. Battle meets with Stribling in a parking lot, which Battle later identified in his testimony as the parking lot for Hillcrest Apartments in Philadelphia. Battle stays in his car. Stribling approaches the passenger-side window. The camera swings wildly from side to side, and it is not clear what transpires in this recording, except it does appear that Battle hands Stribling cash toward the end of their conversation.
¶ 13. Officer Gregory testified that on January 25 and March 29, he and Battle met after the purchases. At those times, Battle handed over what appeared to be rocks of crack cocaine. The crime laboratory later confirmed that the rocks obtained on January 25 contained .5 gram of cocaine base. The rocks obtained on March 29 contained .2 gram of cocaine base.
¶ 14. Stribling was convicted of three counts of selling a Schedule II controlled substance in violation of Mississippi Code Annotated section 41 — 29—139(a)(1) (Rev. 2009). She was sentenced to ten years on count one, two years on count two, and one year on count three for a total of thirteen years. The sentences were ordered to run consecutively, with the entire sentence served in the custody of the Mississippi Department of Corrections. Her appeal was deflected to this Court for our review.
ANALYSIS

1. Whether the trial judge erred when he refused to require the State to play the entire video recordings.

¶ 15. The State, in its case-in-chief, admitted the video recordings into evidence. The State then played for the jury only those parts of the recordings that showed the drug transactions. The trial judge denied Stribling’s request that the entire video recordings be played at that time. On appeal, Stribling argues that under Mississippi Rule of Evidence 106, she was entitled to have the State play the entire video recordings.
¶ 16. The trial judge decided that the omitted parts of the recordings were not relevant and that, if played, they would merely waste time. Indeed, our review of the recordings shows that during Battle’s drives from the pre-buy meetings to the purchase sites and then from the purchase sites to the post-buy meetings, the camera was pointed at either Battle’s gearshift or his glove compartment. The viewer can neither see nor hear anything of any consequence.
¶ 17. However, Stribling argues that these seemingly immaterial parts of the recordings would have supported her theory of defense. Her theory was that the State failed to establish that the drugs Battle delivered to Officer Gregory were obtained from her. She argued that Battle could have already had the drugs in his possession, or he could have obtained them from someone or somewhere else en route to or from the purchase sites. Indeed, the recordings do not rule out that theory. As Officer Gregory conceded on cross-examination, since the recordings do not show what Battle was doing during the drives, he conceivably could have retrieved the drugs from a hidden location or obtained the drugs elsewhere en route.
¶ 18. Rule 106 provides:
When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or *1160 any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.
While the rule only refers to writings or recorded statements, in Wells v. State, 604 So.2d 271, 277-78 (Miss.1992), the Mississippi Supreme Court indicated that the rule is applicable to video recordings like the ones at issue here. In Wells, the State played only parts of a surveillance tape that showed the defendant embezzling funds from her employer. Id. at 277. The defendant asked that the entire recording be played, and the trial judge denied the request. Id. On appeal, the supreme court affirmed the trial judge’s decision, in part, because the defendant cited no authority for her assignment of error. Id. Significantly, the supreme court noted that the defendant “ma[de] no claim under [Rule] 106 (rule of completeness).” Id. Therefore, we will assume for the purposes of our analysis that the rule is applicable in this context.
¶ 19. In this case, there were two reasons the trial judge could have used to refuse to require the State to play the entire recordings. First, he could have found, under Rule 106, that the omitted parts did not “in fairness [have] to be considered contemporaneously with” the parts that were played. Alternatively, he could have found — and it appears he did— that, under Mississippi Rule of Evidence 403, the probative value of the omitted parts was substantially outweighed by considerations of waste of time.
¶ 20. This Court has reviewed the recordings in their entirety, and we find that the trial judge did not abuse his discretion when he allowed the State to play only certain excerpts. There are approximately thirty minutes of recorded video that show nothing more than Battle’s gearshift or glove compartment while he was driving to the purchase sites. The trial judge properly exercised his discretion under Mississippi Rule of Evidence 403 and declined to compel the State to play the entire recordings. That decision was not in error.
¶ 21. In Wells, the supreme court held: Clearly, there was no abuse of discretion by the trial judge’s refusal to make the jury a captive audience for four hours of videotape, much of it consisting of Wells standing at a store counter reading a magazine, applying lotion to her legs, or various other activities to pass the time of day in between customers.
Wells, 604 So.2d at 278. The omitted parts of the recordings at issue are similarly superfluous. Furthermore, the supreme court noted in Wells that the defense could have played the entire recordings in its own case-in-chief. Id. at 277. Likewise, in this case, Stribling could have played the omitted parts during her case-in-chief. However, Stri-bling rested without presenting any evidence.
¶ 22. In addition, even if this Court were to find that the trial judge erred under Rule 106, it would be harmless error. “When the weight of the evidence against the defendant is overwhelming, such error is harmless.” Conway v. State, 915 So.2d 521, 526 (¶20) (Miss.Ct.App.2005) (citation omitted). As we discuss below, we find that the evidence against Stribling was overwhelming. Accordingly, this issue has no merit.

2. Whether the trial judge erred when he denied Stribling’s proffered cautionary jury instruction on the testimony of a confidential informant.

¶ 23. Stribling argues that the trial judge erred when he failed to instruct the jury to consider the testimony of Battle, the confidential informant, with cau *1161 tion. She proffered the following jury instruction, which was denied by the trial judge:
The Court instructs the jury that the law looks with suspicion and distrust on the testimony of an alleged accomplice or informant, and requires the jury to [weigh] that testimony with great care and suspicion. You should [weigh] the testimony from an alleged accomplice or informant, and passing on what weight, if any, you should give this testimony, you should [weigh] it with great care and caution, and look upon it with distrust and suspicion.
¶ 24. This exact instruction was at issue in the case of Denson v. State, 858 So.2d 209 (Miss.Ct.App.2003). In that case, a confidential informant who was equipped with an audio-recording device purchased drugs from the defendant. Id at 210 (¶ 2). The informant later testified against the defendant at trial, and the audio recording was admitted into evidence. The defendant requested the cautionary jury instruction recited above. Id at 210 (¶ 3). The trial judge denied the instruction, and this Court affirmed the trial judge’s decision. Id at 210 (¶ 8). We stated:
[A] cautionary instruction is not absolutely required in every case involving the testimony of a [confidential informant], even when there is evidence of potential bias on the part of that witness in favor of the State; especially where the testimony of the witness finds corroboration in other evidence. In the case now before us, there was substantial evidence presented by the State, including an audiotape of the transaction, that corroborated much of the witness’s testimony, and we are satisfied that the court did not err when it refused the above-quoted instruction.

Id

¶ 25. In this case, Stribling argues for an extension of the rule announced by the Mississippi Supreme Court in Williams v. State, 32 So.3d 486 (Miss.2010). In Williams, the supreme court held that a trial judge must give a cautionary instruction for an accomplice’s testimony when that testimony is uncorroborated by other evidence. Id at 491 (¶ 17). The supreme court further held that neither the testimony of another accomplice nor the testimony of a confidential informant can provide the requisite corroboration. Id. at 492 (¶ 21). The supreme court stated that “both accomplice and informant testimony are, ‘by [their] very nature, looked upon with suspicion and distrust.’ ” Id. (quoting Austin v. State, 784 So.2d 186, 193 (¶ 21) (Miss.2001)). However, if the accomplice’s testimony is corroborated, whether to give the cautionary instruction is within the trial judge’s discretion. Id at 490 (¶ 12).
¶ 26. Assuming for the sake of argument that this rule extends to the testimony of a confidential informant, it would not require a cautionary instruction in this case because Battle’s testimony was corroborated by the video recordings. He testified that he purchased crack cocaine from Stribling on three separate occasions. Three video recordings were admitted into evidence that strongly support that testimony. In two of the videos, Stribling places three or four small objects on the kitchen counter; Battle takes possession of the objects; and he then hands her cash. In the other video, he hands her cash through his ear window. In addition, much of the conversation that occurs between Battle and Stribling in the videos is consistent with drug purchases.
¶ 27. Therefore, under Williams, whether to give the cautionary instruction would have been within the trial judge’s discretion. Based on our review of the record, the trial judge did not abuse that discretion by denying the proffered in *1162 struction. Accordingly, this issue has no merit.

3. Whether the trial judge erred when he did not, sua sponte, sever the three counts in the indictment

¶ 28. Next, Stribling argues that the trial judge committed plain error when he allowed the State to prosecute her on a multi-count indictment. She argues that the three sales of cocaine were separate and distinct offenses that should not have been tried in the same proceeding.
¶29. Mississippi Code Annotated section 99-7-2(1) (Rev.2007) provides:
Two (2) or more offenses which are triable in the same court may be charged in the same indictment with a separate count for each offense if: (a) the offenses are based on the same act or transaction; or (b) the offenses are based on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan.
Uniform Rule of Circuit and County Court 7.07(A) adopts, verbatim, the language of the statute. When considering whether a multi-count indictment is proper, the Mississippi Supreme Court requires application of the following so-called Corley considerations:
[ (1) ] whether the time period between the occurrences is insignificant!;] [ (2) ] whether the evidence proving each count would be admissible to prove each of the other counts[;] [ (3) ] and whether the crimes are interwoven.
Rushing v. State, 911 So.2d 526, 533 (¶ 14) (Miss.2005) (quoting Corley v. State, 584 So.2d 769, 772 (Miss.1991)).
 ¶ 30. If a criminal defendant believes that the State has wrongfully proceeded on a multi-count indictment, he or she should ñle a motion to sever the offenses. Id. The trial judge would then hear the motion. Id. The burden would be on the State to make a prima facie showing that the multi-count indictment is proper under the statute. Id. If that showing is made, the defendant would then have an opportunity to rebut. Id. The trial judge would then make his ruling. On appeal, the trial judge’s ruling would be reviewed under an abuse-of-discretion standard of review. Id.
 ¶ 31. In this case, Stribling did not move to sever the offenses or raise the issue of severance in any way. Therefore, this issue is procedurally barred unless the trial judge committed plain error when he did not, sua sponte, sever the offenses. Patrick v. State, 754 So.2d 1194, 1195-96 (¶¶ 7, 12) (Miss.2000). Only an error that affects the defendant’s substantial rights rises to the level of plain error. Id. We find that this does not rise to the level of plain error; therefore, the issue is procedurally barred.
¶ 32. Notwithstanding the procedural bar, the issue is also without merit. In Rushing, the supreme court found that the trial judge did not abuse his discretion when he denied the defendant’s motion to sever. Rushing, 911 So.2d at 537 (¶ 21). The defendant was charged in a multi-count indictment with three counts of prescription forgery. Id. He had successfully passed two forged prescriptions to one pharmacist. Id. at 528-29 (¶ 2). When he tried to pass another forged prescription to a different pharmacist, his fraud was discovered. Id. at 529 (¶ 3). The three offenses were committed over the span of five months. Id. at 535-36 (¶ 17).
¶ 33. The supreme court applied the three Corley considerations recited above. The court found that five months was not a significant enough time span to require severance. Id. Also, there was substantial overlap in the State’s evidence for all three *1163 offenses and that evidence would have been admissible in separate trials for each offense. Id. at 586 (¶ 18). Lastly, the offenses “were clearly linked and part of the same common scheme or plan”; therefore, the offenses were “clearly interwoven.” Id. at 536 (¶ 19).
¶ 34. Likewise, had the trial judge denied a motion by Stribling to sever her offenses, we would not find the trial judge’s decision to be an abuse of discretion. There were only two months between the first and last sales of cocaine. Also, there was substantial overlap in the evidence for each offense. All three offenses, if tried separately, would have required the testimonies of Battle and Gregory. Furthermore, the three cocaine sales, like the three prescription forgeries in Rushing, were “clearly linked and part of the same common scheme or plan.” They formed parts of a common scheme or plan to distribute cocaine for profit. Therefore, the multi-count indictment was proper.
¶ 35. Stribling argues that Mississippi Rule of Evidence 404(b) would prevent the State from introducing evidence of the other two sales of cocaine in a separate trial for just one of the sales; therefore, the second Corley consideration is not satisfied. That Corley consideration provides: “whether the evidence proving each count would be admissible to prove each of the other counts.” Corley, 584 So.2d at 772. Stribling argues that, because that Corley consideration is not satisfied, the three counts should have been severed.
¶ 36. However, the supreme court did not refer to the Corley considerations as “elements.” The court did not hold that, if one of the considerations is unsatisfied, severance is mandatory. In Corley, the court stated that “particular attention” should be paid to the three considerations. Id. In Rushing, they were referred to as “cornerstone considerations.” Rushing, 911 So.2d at 533 (¶ 14). In Golden v. State, 968 So.2d 378, 384 (¶ 19) (Miss.2007), they were referred to as factors that should be “taken together as a whole.” So long as the trial judge follows the proper procedure and considers the Corley factors, whether to sever the offenses is within his discretion. Rushing, 911 So.2d at 533 (¶ 14). Therefore, the mere fact that Rule 404(b) might have operated to exclude evidence of Stribling’s other cocaine sales in a separate, trial for one of the sales does not mean that severance was mandatory.
¶ 37. In conclusion, this issue is procedurally barred because Stribling failed to move to sever the offenses. Notwithstanding the procedural bar, the issue is also without merit.
A Whether the evidence was sufficient to support Stribling’s conviction and whether the verdict is against the overwhelming weight of the evidence.
¶ 38. Lastly, Stribling argues that there was insufficient evidence to support her conviction or, alternatively, that the jury’s verdict is against the overwhelming weight of the evidence. Specifically, she argues that the only direct evidence tying her to the crime was Battle’s testimony. She further argues that paid confidential informants like Battle are inherently unreliable witnesses and that their testimonies should not suffice for conviction.
¶ 39. When reviewing the sufficiency of the evidence, we examine the evidence in the light most favorable to the State to determine whether “any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Bush v. State, 895 So.2d 836, 843 *1164 (¶ 16) (Miss.2005) (citation omitted). When reviewing a claim that the verdict is against the overwhelming weight of the evidence, “we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Id. at 844 (¶ 18) (citation omitted).
¶ 40. Stribling’s argument that the testimony of a paid confidential informant cannot sustain a conviction is not supported by Mississippi law. In Boles v. State, 744 So.2d 349 (Miss.Ct.App.1999), this Court affirmed the defendant’s conviction, which was obtained in large part due to the testimony of a paid confidential informant. We stated:
The fact that the confidential informant was being paid for his services is certainly a matter that the jury may consider in weighing what credibility to assign to the informant’s testimony, but that fact does not necessarily render the informant’s testimony inherently unbelievable. ... The jurors, sitting as finders of fact, are charged with the responsibility of listening to all the evidence, including impeachment evidence that might affect a particular witness’s credibility, and then determining what weight and worth to assign to the evidence. McClain v. State, 625 So.2d 774, 781 (Miss.1993).
Id. at 351 (¶ 8). Here, the fact that Battle was a paid informant was revealed. The jury was fully aware of this fact. In spite of this fact, the jury chose to believe Battle’s testimony. This Court is not persuaded that it should disturb the jury’s factual findings.
¶ 41. Furthermore, in Williams, the supreme court reaffirmed the rule that the testimony of an accomplice, standing alone, is sufficient to support a conviction so long as that testimony is not “unreasonable, self contradictory or substantially impeached.” Williams, 32 So.3d at 490 (¶ 14) (quoting Ballenger v. State, 667 So.2d 1242, 1253 (Miss.1995)). Stribling argues throughout her brief that a confidential informant’s testimony should be treated the same under the law as an accomplice’s testimony. If we accepted that proposition, Battle’s testimony, standing alone, would be sufficient to support Stribling’s conviction because his testimony was not unreasonable, self contradictory, or substantially impeached.
¶ 42. Even so, in this case, we are not faced with a conviction based solely on Battle’s testimony. His testimony was substantially corroborated by the video recordings. Despite Stribling’s arguments to the contrary, these recordings lend enormous support to Battle’s testimony that he purchased crack cocaine from Stri-bling on three occasions.
¶ 43. Accordingly, we find that there was sufficient evidence from which a rational juror could find beyond a reasonable doubt that all the elements necessary to convict Stribling on three counts of selling cocaine were present. In addition, we do not find that the verdict is against the overwhelming weight of the evidence. These issues are without merit.
¶ 44. THE JUDGMENT OF THE NESHOBA COUNTY CIRCUIT COURT OF CONVICTION OF THREE COUNTS OF THE SALE OF COCAINE AND SENTENCES OF TEN YEARS ON COUNT I, TWO YEARS ON COUNT II, AND ONE YEAR ON COUNT III, WITH THE SENTENCES TO RUN CONSECUTIVELY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
*1165 LEE, C.J., MYERS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT. RUSSELL, J., NOT PARTICIPATING.