*977 BEAM, Justice,
for the Court:
¶ 1. Dequane Lomax was indicted by a Hinds County grand jury on two counts of forcible rape in violation of Mississippi Code Section 97-3-65(4)(a) and two counts of simple assault on a law-enforcement officer in violation of Mississippi Code Section 97-3-7(l)(b). The Hinds County Circuit Court severed Count I from Counts II, III, and IV. Lomax then proceeded to trial on Counts II, III, and IV in March 2014. Lomax was convicted of Count II, forcible rape, and found not guilty of Counts III and IV, simple assault on a law-enforcement officer.
¶ 2. We find cumulative error occurred ■ at trial that deprived Lomax of the right to a fair trial. Therefore, we must reverse the judgment and remand this case for a new trial. Because we are remanding for a new trial, we need not address all the issues argued on appeal. Those not addressed in this opinion were fully considered by this Court and found to be without merit and/or moot. Accordingly, we limit our recitation of the facts to those we find necessary for the disposition of our decision.
PROCEDURAL HISTORY
¶ 3. In May 2013, a Hinds County grand jury indicted, eighteen-year-old De-quane Lomax for two counts of forcible rape in violation of Mississippi Code Section 97-3-65(4)(a) and two counts of simple assault on law-enforcement officers in violation of Mississippi Code Section 97-3-7(b).
¶ 4. Count I alleged that on September 10, 2012, Lomax forcibly raped seventeen-year-old T.L. at an abandoned building in Jackson, Mississippi.[1] Count II alleged that on January- 20, 2013, Lomax forcibly raped fifteen-year-old S.C. at her residence in Jackson, Mississippi.[2]. Counts III and IV alleged that Lomax assaulted two law-enforcement officers, Detective Shivon Hodges and Detective Ella • Thomas, on February 7, 2013, in violation of Mississippi Code Section 97-3-7(b).
¶ 5. Count I was severed from Counts II through IV. Lomax requested that the simple-assault charges, Counts III and IV, be severed from the forcible-rape charge, Count II. The trial court refused to sever the simple-assault charges from the rape charge because the simple-assault charges arose from the investigation of the forcible-rape charge. The jury found Lomax guilty of forcible rape against S.C. but not guilty of simple assault against the 'law-enforcement officers.
FACTS
¶ 6. S,C. and Lomax first became acquainted through Facebook. In January 2013, S.C. met Lomax for the first time outside her aunt’s. house, S.C. testified that on January 20, 2013, Lomax texted her and asked if he could visit her. S.C. agreed but told him she would text him when her mother, Barbara Carter, left for work. Once her mother left, S.C. texted Lomax, and he arrived approximately five to ten minutes later. Lomax sat in a chair in the middle of the living room, and S.C. sat on the couch.
¶7. Lomax asked S.C. for a hug, but she told him no. Lomax then sat next to S.C. on the couch and gave her a hug. S.C. asked Lomax, to leave, but he asked *978 permission to stay a few more minutes and she agreed. After several' failed attempts to kiss S.C., Lomax -grabbed S.C.’s -legs and pulled her toward him, attempting to kiss her again. He said, “You give me a kiss and I’ll stop.” S.C. replied, “No, get off me.” ■ Lomax tried to remove S.C.’s pants, but she -kicked him and told him to get off her. Lomax placed his hands around S.C.’s neck. S.C. let go of her pants and grabbed Lomax’s hands. Lo-max removed S.C.’s pants, and she continuously kicked him.
¶ 8. S.C. agreed to let Lomax “do it” if he would allow her to get a glass of water. When S.C, was free, she ran into the kitchen and grabbed a knife off the kitchen counter. Lomax grabbed the knife, pushed- S.C. against the wall, and held the knife against her neck. With the knife still in his hand, Lomax grabbed her hand, sat her in the chair, and told her, “[y]ou can suck my d* * * or you either f* * * me.” S.C. told him that she wanted to do neither and wanted hini to stop, but Lo-max led her to her bedroom and pushed her on the bed.
' ¶ 9, S.C, attempted to resist Lomax, but he began choking her again. He held her down and glided the knife over her lower back and raped her. Within minutes, Lomax put his clothes on and left the room. S.C. grabbed her phone to call for help, but Lomax immediately returned to the room, grabbed the phone, and' erased his number from S.C.’s cell phone. Lomax grabbed the knife and walked out of the room, and S.C. followed. Lomax threw the knife on a chair, unlocked the door with his hands in his shirt and left.
¶ 10, S.C. called her cousin, Trinita Johnson, and told her that she had been raped. Trinita immediately came to S.C.’s house and called Carter. When Carter arrived, S.C. told her that she had been raped but did not tell her who had raped her. Carter took S.C. to the Univérsity of Mississippi Medical Center -.(UMMC), where S.C. was examined by a sexual-assault nurse-práctioner. S.C. testified to those facts at trial. -
¶11. "On February 4, 2013, S.C. was interviewed- by Regan Doíeac, a sexual-assault nurse-practioner with the- Children’s Justice Center (CJC). The next day, S.C. was interviewed by Erin Gowen, a licensed social worker and forensic interviewer with the Childrens Advocacy Center (CAC). The CJC interview was audio recorded, and the CAC interview was video recorded. S.C. testified at trial about both interviews.
¶ 12. On cross-examination, Lomax’s trial counsel attempted to question S.C. about what occurred at the end of her interview at the CAC. The State objected and a proffer was held outside the presence of the jury by which S.C. testified about talking to herself when Gowen left the room. S.C. told the trial. court' that she was not talking about the rape or anything to do with Lomax. Rather, she was talking about “other relationships that were happening in my life,” including a situation with her best friend. S.C. told the court -she was tired of retelling her story at the time and was “pissed off’ and wanted to leave the interview. During the proffer, S.C. -testified that when she gets upset she talks to herself and hits walls.
¶ 13. The trial court viewed the video recording outside the presence of the jury. Lomax’s attorney argued that the video was relevant with respect to whether or not S.C. is credible. Defense counsel argued'that-it was obvious S.C, was talking about Lomax when Gowen left the room: “A reasonable person could certainly believe that she was inferring [sic] to what she’d just spent the last 30 minutes talking to Ms. Gowen about. There certainly would be ways for [the State] to contradict *979 that. But, Your Honor, I certainly believe it passes the relevancy test.”
¶ 14. The State contended that the “ramblings” on the recording were highly prejudicial and that it was very difficult to ascertain what-S.C. was saying. The State argued as to whether these “ramblings” were even statements.
¶ 15. Lomax argued for admission of the video based on Rule 613(b) of the Mississippi Rules of Evidence. The trial court disagreed and found as follows:
I listened to the video — or rather I viewed the video and listened to the audio. And what I saw after carefully viewing it in those roughly two minutés were unintelligible, emotional ramblings in a completely unrelated, context. I couldn’t hear what was represented by counsel as being clear. I heard a few words completely out of context, and I— I’m going to sustain the State’s motion.
I don’t believe those were — those words are relevant to the issue before the [c]ourt. And even if they were, I believe under 403 that evidence should be excluded because I believe any probative valúe would be substantially outweighed by confusion of the issues or misleading the jury. So I’m going to sustain the State’s motion.'
¶ 16. In addition to. S,C.’s. testimony, the State presented testimony from numerous individuals, including: S.C.’s mother, S.C.’s cousin, a sexual-assault nurse who had examined S.C. at UMMC, a UMMC emergency-room physician, officers from the Jackson Police Department (JPD), two crime-lab technicians from the JPD crime laboratory, a forensic .biologist from the Mississippi Crime Laboratory, a DNA analyst from Scales Biological Laboratories, Doleac of the CJC, and Gowen of the CAC.
¶ 17. The evidence sufficiently showed that a sexual encounter had occurred between S.C. and Lomax. The ultimate question, however, was whether it was consensual.
¶ 18, During Gowen’s testimony, the State questioned Gowen about what S.C. had told her during the interview, with no objection from the defense.- S.O'.’s account to Gowen about what occurred on January 20 was fairly consistent with what S.C.'had told both Doleac and the sexual-assault nurse at UMMC. Gowen testified that she had found S.C.’s statements “consistent with a child who had been abused.” The State did!.not offer the yidep recording into evidence.
¶ 19. During Gowen’s cross-examination, Lomax’s attorney -sought to introduce the video on the basis- it contained prior inconsistent statements by S.C. Defense counsel did not want the entire video shown because it contained evidence about Lomax’s other rape charge.' So defense counsel asked the court to allow portions of the video to be played for the jury for demonstrative purposes only. The State objected to any portion of the video recording being shown ■ to the jury. The State argued if Lomax wanted to impeach S.C. -with the statements on the video “the time to do it was when [S.C.] was on- the stand”; the State claimed that trial counsel “had ample opportunity to do that while [S.C.] was, on the. stand..” Citing Hall v. State, 691 So.2d 415 (Miss.1997), Lomax’s trial counsel argued that Lomax was entitled to question Gowen about the video under Rule 613 of the Mississippi Rules of Evidence.
¶20. The trial court sustained the State’s objection, finding that “the victim should have been impeached with it ... while she was on the witness -stand” so that “she would have had an opportunity to have viewed it and responded to it.”
*980 ¶21. Later, during Gowen’s cross-examination, defense counsel asked Gowen, “was there anything unusual about your observations that day about [S.C.]?” The State objected. Defense counsel said he intended to ask Gowen about the conclusion of her report where she recommended a mental-health assessment for S.C. due to unusual behaviors during the interview. The trial court prohibited this line of questioning also, stating, “I don’t believe it’s relevant. I believe that even if it was nominally relevant, it would violate Rule 403, so I’m going to disallow it.”
¶ 22. At the conclusion of Gowen’s testimony, defense counsel made a proffer by asking Gowen about S.C.’s unusual behavior on the video during the interview. Gowen testified that, after she left the room, S.C. began talking to herself using her hands as puppets, each with a different voice. Gowen admitted hearing S.C. say “you should just tell her the truth.” Gowen denied hearing S.C. say that the truth would “ruin the relationship” or that “you should just get out of here so you can text her and tell her the truth.” Gowen testified that this behavior as well as S.C.’s flat, monotone affect, caused her to recommend a mental health assessment for S.C., and Gowen admitted that her report included a recommendation for a mental-health assessment due to unusual behaviors exhibited during the interview.
¶23. In addition to the evidence presented on the rape charge, the State submitted evidence in support of the two charged counts of simple assault on a law-enforcement officer. On February 7, 2013, two weeks after the alleged rape incident, JPD Officers Shivon Hodges and Ella Thomas questioned Lomax at the police station. Near the end of the interview, Officer Hodges began yelling at Lomax, calling him “Ronald Rapist.” After the interview, Hodges and Thomas escorted Lomax out of the interrogation room and to the holding facility. Hodges testified that Lomax became angry in the hallway and yelled, “F* * * /all. Y’all don’t have s* * * on me.” When they entered the elevator, Lomax attacked Hodges and tried to retrieve her weapon. Thomas intervened. Hodges and Thomas wrestled with Lomax until the elevator doors opened and other officers came to assist them. Both officers testified that they had suffered minor injuries from the attack.
¶ 24. Following the State’s case-in-chief, Lomax testified on his own behalf. He admitted to having sex with S.C., but he claimed it was consensual. He said it occurred at his father’s home, while his father was asleep. Lomax said that S.C. became angry with him afterwards when he would not respond to any of her text messages to him.
¶ 25. As to the alleged assaults on Officers Hodges and Thomas, Lomax testified that he did not attack either officer and that they attacked and punched him, throwing him out of the elevator and dragging him to a jail cell.
¶26. The jury found Lomax guilty of rape in violation of Section 97-3-65(4)(a), and not guilty on both counts of simple assault of a law-enforcement officer.
¶27. Lomax appealed, raising, a number of issues. Having reviewed and considered the record, we find that the trial court erred in not severing Lomax’s rape count from the simple-assault counts. We also find that the trial court erred by not allowing cross-examination with regard to S.C.’s statements. While not necessarily reversible error individually, we find their cumulative effect deprived Lomax of a fair trial. The State’s evidence in this case, while sufficient to sustain a conviction, was not overwhelming. Thus, we cannot say that the errors in this case were harmless beyond a reasonable doubt. Additional *981 facts, as necessary, will be related in our discussion.
DISCUSSION
I. SEVERANCE
¶28. We agree with Lomax that the trial court erred in refusing to sever the simple-assault charges from the rape charge.
¶29. When reviewing issues of severance, this Court applies an abuse-of-discretion standard of review. Brawner v. State, 872 So.2d 1, 6-7 (Miss.2004). Mississippi Code Section 99-7-2 provides the authority given to trial courts to try a defendant for multiple counts in one indictment. The statute reads:
(1) Two (2) or more offenses which are triable in the same court may be charged in the same indictment with a separate count for each offense if: (a) the offenses are based on the same act or transaction; or (b) the offenses are based on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan.
(2) Where two (2) or more offenses are properly charged in separate counts of a single indictment, all such charges may be tried in a single proceeding.
Miss.Code Ann. § 99-7-2 (Rev.2015).
¶ 30. When addressing an issue of severance, Corley v. State, 584 So.2d 769 (Miss.1991), provides guidance to trial courts. Corley stated:
When a defendant raises the issue of severance, we recommend that a trial court hold a hearing on the issue. The State, then, has the burden of making a prima facie case showing that the offenses charged fall within the language of the statute allowing multi-count indictments. If the State meets its burden, a defendant may rebut by showing that the offenses were separate and distinct acts or transactions.
Id. at 772.
¶ 31. The trial court should consider the following factors in determining whether severance is proper: (1) whether the time period between the occurrences is insignificant; (2) whether the evidence proving each count would be admissible to prove each of the other counts; and (3) whether the crimes are interwoven. Id. If this procedure is followed, this Court “will defer to the trial court’s findings even if the jury later acquits the defendant on one or more counts or if this Court concludes on appeal that a directed verdict, J.N.O.V. or new trial should have been granted on one or more counts.” Id.
¶ 32. Here, the trial court held a Corley hearing but did not discuss each Corley factor when it denied Lomax’s motion to sever the counts. In denying Lomax’s motion to sever the assault counts from the rape count, the trial court agreed with the State’s contention that the all counts were connected because Lomax was interrogated about the rape allegation, which resulted in the simple assaults. The trial court failed to take into consideration the other Corley factors.
¶ 33. First, “[t]he intervening time period must be insignificant as a prerequisite to both the second or third options.” Williams v. State, 794 So.2d 1019, 1025 (Miss.2001). There is no bright-line test with regard to the time factor, and the trial courts are instructed to consider the totality of events surrounding each case.
¶ 34. Here, the time period in this case was eighteen days-the alleged rape having occurred on January 20, and the alleged assaults having occurred on February 7. This Court has affirmed trial-court decisions that have found several months to be insignificant time periods. See Rushing v. State, 911 So.2d 526, 535-36 (Miss.2005) *982 (holding that five-month time period in which three prescription forgeries were committed was not insignificant); Eakes v. State, 665 So.2d 852, 861-62 (Miss.1995) (five-month time period was insignificant where sexual offenses involved the same victim).
¶ 35. Rushing and Eakes, however, are distinguishable. In Rushing, the two offenses at issue were almost identical. In Eakes, the victim was the same person. Thus,-the five-month, time span in both cases was insufficient to say the offenses were separate and distinct actions or transactions. .
¶ 36. Here, though, the alleged offenses'clearly were not based on the'“same act or transaction.” And the victims'were not the same. Thus, the intervening time period of more than two weeks is a factor and is not insignificant in - -this instance. Accordingly, we find the first Corley factor weighs in favor of severance.
¶ 37. On the second factor, whether the evidence proving each count would be admissible'to prove each of the other counts, both parties agree that the evidence needed to prove the rape charge-was different from the evidence needed to prove the simple-assault charges. Thus, this factor weighs in favor of severance.
¶ 38. As to the third factor, whether the crimes áre interwoven, we find no “common thread.” This Court’s decision in Richardson v. State, 74 So.3d 317 (Miss. 2011), helps to illustrate. In Richardson, this Court found that the trial court did not err in denying the defendant’s motion to sever a charge of capital murder and a charge of being a’convicted felon in possession of a firearm. Id. at 328. The defendant in that case killed the victim by hitting him on' the head with a baseball bat. Id. The defendant stole the victim’s wallet, and later that evening used the .money contained in the wallet to buy two guns. Id. When discussing -the third Corley factor, this Court stated:
[W]e find that [Michael] Richardson’s charges have a “common thread” — the money stolen from [Harvey] Evans. The underlying felony in Richardson’s murder charge is' robbery. After Richardson hit Evans on the head with a baseball bat, he stole Evans’s wallet, which contained a large amount of cash. Shortly thereafter, Richardson used the money he had stolen from Evans, among other things, to purchase two guns. Based .on this connection, we find that •the trial court did not abuse its discretion in finding that Richardson’s two charges were interwoven.

Id.

¶ 39. In Ott v. State, 722 So.2d 576, 577 (Miss.1998), the trial court' denied the defendant’s request to sever separate counts of the sale and possession of marijuana. This Court agreed, finding that'the two offenses were interwoven because the information discovered from the first purchase led to the set-up of 'the second purchase. Id. at 581.
¶40, In both Richardson and Ott, a “common thread” allowed the respective defendants to accomplish- the subsequent offense(s). Here, although the interrogation is a connecting factor' between the offenses, the interrogation was not a means to accomplish the alleged assault on the officers.
¶41. Because all three Corley factors weighed in favor of severance, we find that the trial court erred when it refused to sever the rape charge from the assault charges.
¶42. The State contends that, even if the -trial court erred in not severing the counts, Lomax can show no prejudice because he was acquitted on the assault *983 charges. While. there is' validity to the State’s point, wé must reject it. As mentioned, this case centers on credibility, and the evidence in this case was not overwhelming. Thus, we cannot say that the evidence submitted in support of the assault charges did not unfairly buttress the State’s theory of the rape case, built on the premise that Lomax is violent against women. Coupled with the cross-examination violation (to be discussed next), we find no merit in the State’s argument.
II. CROSS-EXAMINATION
¶ 43. Cross-examination no doubt is a matter of right. Black v. State, 506 So.2d 264, 266 (Miss.1987). ' “[O]ne accused of a crime has the right to broad and extensive cross-examination of the witnesses against him, and especially is this so with respect to the principal prosecution witness.” Suan v. State, 511 So.2d 144, 148 (Miss.1987). “Limitations placed on cross-examination are reviewed using an abuse-of-discretion standard.” Ervin v. State, 136 So.3d 1053, 1058 (Miss.2014). “The discretion of the trial, judge, however, must be exercised within the boundaries of the Mississippi Rules of Evidence.” Johnston v. State, 618 So.2d 90, 93 (Miss.1993).
¶ 44. Here, we find no error in the trial court’s ruling(s) prohibiting Lomax from showing the video recording, or any portions of it, to the jury. As mentioned, Lomax’s defense counsel sought to use the video recording as impéachment evidence against S.C. and/or Gowen, based ori the contention that it contained inconsistent statements made by S.C. while she was sitting alone in the interview room, because this went to her credibility.-. After reviewing the tape, the trial court would not allow it because much of it was incomprehensible, could not be put into context, and would be prejudicial to the State’s case.
¶ 45. The video recording at issue constitutes extrinsic evidence. Mississippi Rule of Evidence 613(b) states as follows with regard to extrinsic evidence:
Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity .to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(d)(2).
¶46. The general rule with regard to use of extrinsic evidence as impeachment evidence is, if a witness admits to making a prior inconsistent .statement, extrinsic evidence of that statement is inadmissible. Foster v. State, 508 So.2d 1111, 1119 (Miss. 1987), overruled on other grounds by Powell v. State, 806 So.2d 1069, 1080 (Miss. 2001), (citing United States v. Greer, 806 F.2d 556 (5th Cir.1986) (applying Fed. R.Evid. 613)). This is because the witness is then impeached when that occurs.
¶ 47. But whether a statement is in fact inconsistent is committed to the sound discretion of the trial court. See State v. Jaiman, 850 A.2d 984, 988 (R.I. 2004) (whether a statement is inconsistent for purposes of impeachment evidence is a determination for the trial judge); People v. Hastings, 161 Ill.App.3d 714, 113 Ill. Dec. 451, 515 N.E.2d 260, 264 (1987) (same); United States v. Jones, 808 F.2d 561, 568 (7th Cir.1986) (same); State v. St. Germain, 369 A.2d 631, 632 (Me.1977) (same).
¶48. Here,. S.C. admitted during proffer outside the presence of the jury, to making the statements recorded by the video, camera. She denied, however, that the statements were in reference to Lomax and/or the alleged rape. Whether that is *984 true or not cannot be discerned (put into context) without speculation or conjecture. Thus, it cannot be said that any of the statements made by S.C. while sitting alone in the interview room are inconsistent for purposes of Rule 613(b).
' ¶ 49. Further, having reviewed the video recording, we cannot impugn the trial court’s stated impression of it. To us, certain statements are comprehensible while others are not—and there is debate even among us as to which. But we are in a completely different setting than the trial court. What may be understandable to us certainly might not be to others. Thus, we acknowledge the trial court’s concern about showing the video to the jury.
¶ 50. Accordingly, we find no abuse of discretion in the trial court’s decision not to allow the video recording itself—as extrinsic evidence—to be used as impeachment evidence.
¶51. That said, we do however find error on the part of the trial court in not allowing Lomax’ defense counsel to cross-examine S.C. concerning her alleged prior statement(s), made at either the CAC interview or the CJC interview. This includes those statements made by S.C. when she was sitting alone in the interview room. While the video recording was inadmissible for purposes of 613(b), Lomax should have been allowed to question S.C. about the alleged statements by ordinary cross-examination.[3] The record illustrates that this could have been done properly.
¶ 52. The same goes for Gowen’s testimony. Gowen was allowed to offer her opinion that the statements S.C. made to her during the interview were consistent with someone who has been abused. This was opinion testimony, the credibility of which the jury must weigh and determine. Gowen observed S.C.’s conduct while S.C. was left alone in the room. Whatever assessment she got from it certainly would go to Gowen’s credibility. Thus, we find that the trial court erred in not allowing Lomax’s defense counsel to cross-examine Gowen accordingly.
¶ 53. For these reasons, we hold that Lomax is entitled to a new trial, in which these errors are unlikely to recur.
CONCLUSION
¶ 54. We reverse the judgment of the Hinds County Circuit Court and remand the case to the trial court for a new trial on the rape charge.
¶ 55. REVERSED AND REMANDED.
WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., CONCUR. KITCHENS, J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY KING AND COLEMAN, JJ.; DICKINSON, P.J., AND MAXWELL, J., JOIN IN PART. LAMAR AND MAXWELL, JJ., CONCUR IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION.

. Initials are used in place of the name of the minor. According to the indictment, T.L. was ' born on October 22, 1984; however, the trial court allowed the State to amend the indictment and properly reflect that T.L, actually was born in 1994.

. Initials are used in place of the name of'the minor.

. See also M.R.E. 608(b), which states as follows:
(b) Specific Instances of Conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness’s character for truthfulness, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.