# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-01832-COA

SIDNEY HUMBLES A/K/A SIDNEY KAREEM HUMBLES A/K/A SIDNEY K. HUMBLES

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 04/21/2015 |
| TRIAL JUDGE: | HON. JEFF WEILL SR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | TOM KESLER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF COUNT I, ARMED ROBBERY, AND SENTENCED TO LIFE WITHOUT PAROLE AS A HABITUAL OFFENDER; COUNT II, FELON IN POSSESSION OF A FIREARM, AND SENTENCED TO LIFE WITHOUT PAROLE AS A HABITUAL OFFENDER; COUNT III, SIMPLE ASSAULT, AND SENTENCED TO SIX MONTHS; AND COUNT IV, ROBBERY, AND SENTENCED TO LIFE WITHOUT PAROLE AS A HABITUAL OFFENDER, WITH THE SENTENCES TO RUN CONCURRENTLY WITH ONE ANOTHER AND ALL OTHER HINDS COUNTY SENTENCES, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED - 01/24/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND FAIR, JJ.**

**LEE, C.J., FOR THE COURT:**

¶1.     In this appeal we must decide: (1) whether the trial court erred when it denied Sidney Humbles's motion to sever Count IV from Counts I-III; (2) whether the trial court erred when it declined to dismiss the indictment due to an alleged speedy-trial violation; and (3) whether Counts II and III of the indictment were fatally defective.

## FACTS AND PROCEDURAL HISTORY

¶2.     On September 18, 2011, a man assaulted and robbed Mina Paul at Fairway Grocery, a convenience store owned by Mina and located in Jackson, Mississippi. Mina testified that she recognized the man as both a customer and the "donut man" who had been selling donuts in front of her store for approximately a month. Mina stated that on a previous occasion she had bought a donut from the man, though she did not on this particular day. Mina testified that on the day of the robbery, the man attempted to sell donuts outside of Mina's store for some time prior to entering the store, jumping over the counter, assaulting Mina, and robbing her of $400.

¶3.     On September 20, 2011, two days later, about half a mile from Mina's store, a man rang the doorbell of Paul and Melvern Mickell's home and offered to sell Melvern some donuts. According to Melvern, when she declined, the man forced his way into the home, pushing Melvern down. Melvern yelled out for her husband, Paul, who testified that he heard something hit the floor and Melvern yelling. He then jumped out of bed, grabbed his gun, and went to check on Melvern. When Paul saw the man, he began shooting. At some

2

point, the man took Paul's gun and pointed it at Melvern, threatening to shoot her. The man demanded money and pointed the gun at Paul, who led him down the hallway to the bedroom to get Melvern's purse. In order to dispatch the police, Paul pressed an alert button in his bedroom and then gave the man the purse. Once he realized the police had been called, the man left the Mickells' home, taking with him the gun and the purse. Police later recovered Melvern's purse, which was missing a twenty-dollar bill and a silver dollar. Paul's handgun was recovered across the street from the home.

¶4. Felix Hodge, an officer with the Jackson Police Department, investigated the robberies at Fairway Grocery and the Mickells' home. Paul informed Officer Hodge that he may have shot the man who robbed them. Officers searched local hospitals for a male patient with a gunshot wound and located Humbles at University Medical Center. Officer Hodge testified that both Mina and the Mickells stated they had been robbed by a "donut man," and all selected Humbles from a photo lineup. Officer Hodge then interviewed Humbles and inquired about the two robberies. Humbles admitted, in separate statements, to having committed both of the robberies. Humbles was subsequently arrested.

¶5. On October 19, 2011, Humbles's parole was revoked, and he was taken into the custody of Mississippi Department of Corrections to serve the suspended portion of his prior sentence. Humbles was then indicted in December 2011. The indictment charged Humbles with the following: Count I, armed robbery committed on September 20, 2011, against the Mickells; Count II, felon in possession of a firearm; Count III, simple assault against Melvern; and Count IV, robbery committed on September 18, 2011, against Mina. On

3

January 18, 2012, Humbles filed a motion demanding a speedy trial. He was served with his indictment on June 19, 2014, and arraigned on September 15, 2014. Humbles's trial began April 7, 2015.

¶6.     During pretrial motions, Humbles moved to sever Count IV from Counts I, II, and III. Humbles also moved to dismiss the charges for speedy-trial violations. Both motions were denied by the trial court. At trial, Humbles was convicted on all four counts and sentenced to three life sentences as a habitual offender, and to six months for the simple assault. Humbles now appeals.

## DISCUSSION

### I.      Motion to Sever

¶7.     Humbles claims that the trial court erred when it declined to sever Count IV from Counts I-III. We review the trial court's rulings on issues of severance under an abuse-of-discretion standard. *Williams v. State,* 991 So. 2d 593, 602 (¶31) (Miss. 2008) (citing *Rushing v. State,* 911 So. 2d 526, 532 (¶12) (Miss. 2005)).

¶8.     In Mississippi, multicount indictments can be tried together in the same court so long as "the acts or transactions are connected together as part of a common scheme or plan." *Rushing*, 911 So. 2d at 532 (¶13). Mississippi Code Annotated section 99-7-2 (Rev. 2015) provides that:

> (1) Two (2) or more offenses which are triable in the same court may be charged in the same indictment with a separate count for each offense if: (a) the offenses are based on the same act or transaction; or (b) the offenses are based on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan.

> (2) Where two (2) or more offenses are properly charged in separate counts of a single indictment, all such charges may be tried in a single proceeding.

¶9. The Mississippi Supreme Court has directed that when a defendant seeks to sever counts in an indictment, the State must make a prima facie showing that the offenses fall within the confines of the statute. *Corley v. State,* 584 So. 2d 769, 772 (Miss. 1991). Once the State has met its burden, the defendant may rebut by showing the "offenses were separate and distinct acts or transactions." *Id.* In making its determination, the trial court should consider the following *Corley* factors: "(1) whether the time period between the occurrences is insignificant; (2) whether the evidence proving each count would be admissible to prove each of the other counts; and (3) whether the crimes are interwoven." *Lomax v. State,* 192 So. 3d 975, 981 (¶31) (Miss. 2016) (citing *Corley,* 584 So. 2d at 772). Finally, "[i]f this procedure is followed, [the appellate court] will defer to the trial court's findings . . . ." *Id.*

¶10. Here, Humbles moved to sever Count IV from Counts I-III. The trial court heard the motion the morning of trial, prior to the commencement of voir dire, and outside the presence of any potential jurors. The State presented evidence showing that Humbles's offenses were part of a common plan or scheme. Specifically, the State presented evidence that the same investigating officer would testify that: Humbles gained access to rob each victim under the guise of selling donuts; he targeted elderly female victims; the offenses occurred less than a half mile apart; and the offenses occurred just forty-two hours apart from each other. Humbles attempted to rebut by arguing that: there was no evidence that he attempted to sell a donut to Mina on the day he robbed her; one count charged armed robbery while the other charged strong-armed robbery, and these constituted distinct crimes; and the location of the

two robberies occurred two days apart in time and miles apart in location. Humbles also argued that the similar elderly age of Mina and the Mickells was coincidental rather than part of a scheme.

¶11. In ruling on the severance motion, the trial court properly set forth the applicable statute, section 99-7-2, and the controlling case, *Corley*. The trial court then went on to discuss the *Corley* factors. To fully address this issue, we refer to the record of the proceedings.

¶12. Considering the first prong of *Corley*—whether the time period is insignificant—the the trial court found that the two incidents occurred just "[forty-two] hours or so" apart and accurately noted that "there is no bright line test as to the amount of time." As such, the trial court did not find the amount of time between the offenses to be significant. Addressing the second prong of *Corley* – whether the evidence proving each count would be admissible to prove the other counts – the trial court found that "the detective testified that [the] evidence consisted of statements of the defendant, [eyewitness] testimony of the . . . alleged victims, as well as . . . in one of the counts[] there was a separate witness or two." The trial court found that some of the testimony would be admissible to prove the other counts – including witness testimony of Humbles as "the donut man," which leads into the third and final prong.

¶13. Considering the third prong of *Corley* – whether the crimes are interwoven – the trial court found that in both crimes Humbles "alleged[ly] [made an] effort . . . to sell donuts to the victims"; that the "location[s] of the alleged crimes were close in proximity[,] . . . roughly half a mile [apart,]" and "that the victims were both elderly females . . . ." The trial court

6

ultimately found that "the evidence supports the State's position that the . . . actions of the defendant were part of the same common scheme or plan." Finding that it lacked merit, the trial court denied Humbles's motion to sever.

¶14. We find that the trial court followed the *Corley* procedure, and therefore "defer to the trial court's findings." *Lomax,* 192 So. 3d at 981 (¶31). We note, as both the trial court did and the caselaw demonstrates, that there is no bright-line test for applying each of the factors. Upon our review of the record, the evidence was sufficient for the trial court—looking at the totality of the circumstances—to find that Humbles's offenses constituted a common plan or scheme. As such, we do not find that the trial court abused its discretion in denying Humbles's motion to sever. This issue is without merit.

## II. Speedy-Trial Violation

¶15. Humbles claims the trial court erred when it denied his motion to dismiss for failure to provide a speedy trial. Humbles claims he made a pro se motion prior to trial to dismiss for a speedy-trial violation, although the trial court noted it never received said motion. And there is not one in the record before us. The trial court, however, permitted Humbles – then through counsel – to argue his speedy-trial motion. The trial court denied Humbles's motion, finding that "under Mississippi law, the statutory right to a speedy trial attaches at arraignment," and only 204 days had elapsed between Humbles's arraignment and trial.

¶16. In Mississippi, criminal defendants have a right to be "tried no later than two hundred seventy (270) days after the accused has been arraigned." Miss. Code Ann. § 99-17-1 (Rev. 2015). Therefore, "unlike the constitutional right to a speedy trial[,] . . . the statutory

7

speedy[-]trial right attaches at arraignment." *Rowsey v. State,* 188 So. 3d 486, 496 (¶32) (Miss. 2015). In his appeal, Humbles asserts that his *constitutional* right to a speedy trial was violated by "the inaction of the [S]tate to have him served with this indictment while in custody and for the case to move forward as required."

¶17.    At trial, Humbles only raised the issue of his statutory right to a speedy trial. An appellate court "will not hold a trial court in error for issues not presented to it for consideration." *Flynt v. State,* 183 So. 3d 1, 14 (¶41) (Miss. 2015) (citing *Moffett v. State,* 49 So. 3d 1073, 1101 (¶91) (Miss. 2010)). Though there is no record of Humbles's pro se motion or record of the trial court's denial order, the transcript reflects that only the statutory right was asserted and argued – with multiple references by both Humbles and the State to the "270 rule."

¶18.    With regard to Humbles's constitutional speedy-trial claim, "the United States Supreme Court has stated that a formal indictment or information or an arrest—[whichever] occurs first—triggers the constitutional right to a speedy trial." *Havard v. State,* 94 So. 3d 229, 237 (¶21) (Miss. 2012) (citing *United States v. Marion,* 404 U.S. 307, 320 (1971)). Here, Humbles's arrest on September 22, 2011, triggered the right. In *Barker v. Wingo*, 407 U.S. 514 (1972), the United States Supreme Court set forth four factors that state courts must consider when analyzing speedy-trial issues: (1) length of delay; (2) reason for the delay; (3) defendant's assertion of his rights; and (4) prejudice to the defendant. *Johnson v. State,* 68 So. 3d 1239, 1249 (¶41) (Miss. 2011) (citing *Barker,* 407 U.S. at 530). It is not necessary, however, for us to conduct this analysis in the instant case.

¶19. In *Havard*, the supreme court held: "Because [the defendant] did not first raise a speedy-trial claim with the trial court, we can decide the issue only if we find that [the defendant] has established a plain-error basis to justify appellate review." *Havard,* 94 So. 3d at 237 (¶22). "For the plain-error doctrine to apply, there must have been an error that resulted in a manifest miscarriage of justice or seriously affects the fairness, integrity[,] or public reputation of judicial proceedings." *Johnson v. State,* 155 So. 3d 733, 738 (Miss. 2014) (citations omitted). We find no such error.

¶20. Like the defendant in *Havard,* Humbles "seeks to leapfrog over the required plain-error analysis by making *Barker*['s] [constitutional-analysis challenge.]" *Havard,* 94 So. 3d at 237 (¶22) (internal quotation marks omitted). Humbles claims his defense was prejudiced by the 1,293 days that elapsed between his arrest and trial, impairing his ability to prepare an adequate defense of the charges he faced. But in fact, Humbles was well aware of the charges before him due to his arrest, indictment, and revocation of his parole. This was further evidenced by the public defender's 2012 motion for discovery and request for a plea offer. Humbles's claims amount to no more than those in *Havard,* where the defendant "merely claim[ed] that his defense was prejudiced by the [delay] . . . between his arrest and trial, . . . and his defense to the charges was diminished by the delay, [and] nothing more." *Id.* This was insufficient in *Havard,* and is likewise insufficient in the instant case. We apply the supreme court's holding in *Havard*: "We need more than just broad assertions made out of the clear blue, that have no support in the record. Accordingly, we find that [the defendant] has failed to show plain error on appeal, and we hold that his constitutional

9

speedy-trial claim remains procedurally barred." *Id.* (internal citation and quotation marks omitted). Therefore, Humbles's speedy-trial claim is without merit.

### III. Defective Indictment

¶21. For the first time on appeal, Humbles claims that Counts II and III of the indictment were fatally defective for failure to specify a date. Issues raised for the first time on appeal are waived. *Nuckolls v. State,* 179 So. 3d 1046, 1053 (¶27) (Miss. 2015) (citing *Walker v. State,* 913 So. 2d 198, 217 (¶49) (Miss. 2005)). Humbles acknowledges he never raised this issue at trial, but he now submits the issue is reviewable for plain error. Again, under plain-error review, an appellate court can, in its discretion, review issues not raised at trial, in order to "correct[] obvious instances of injustice or misapplied law." *Smith v. State,* 986 So. 2d 290, 294 (¶10) (Miss. 2008). Humbles argues that the missing dates on Counts II and III violate his fundamental due-process right to be notified of the charges.

¶22. Indeed, an indictment must contain the essential elements of the offenses charged in order to provide the defendant with sufficient notice of the charges against him. *Townsend v. State,* 188 So. 3d 616, 620 (¶13) (Miss. Ct. App. 2016) (citing *Gilmer v. State,* 955 So. 2d 829, 836-37 (¶24) (Miss. 2007)). But "an allegation of the date of the offense is not an essential element of the offense charged in the indictment." *Mosby v. State,* 134 So. 3d 850, 853 (¶11) (Miss. Ct. App. 2014).

¶23. Here, Count I of the indictment charged Humbles with armed robbery of the Mickells on September 20, 2011. Counts II and III, respectively, charged Humbles with being a felon in possession and simple assault, with no alleged date for either, but still specified the

Mickells as the victims. And Count IV charged Humbles with robbery of Mina on September 18, 2011. It is clear from the nature and descriptions of Counts II and III that the offenses alleged therein occurred on the same date, as a part of the same criminal conduct, and against the same victims as indicated in Count I. The fact that Humbles sought to sever Count IV from Counts I-III, largely because the two incidents occurred on separate dates, indicates an understanding that the offenses charged in Counts II and III corresponded with the date listed in Count I. As such, it is clear that Humbles received sufficient notice of the charges against him, and no injustice or misapplied law is in need of correction. This issue is therefore without merit.

¶24. **THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY, FIRST JUDICIAL DISTRICT, OF CONVICTION OF COUNT I, ARMED ROBBERY, AND SENTENCE OF LIFE IN PRISON WITHOUT PAROLE AS A HABITUAL OFFENDER; COUNT II, FELON IN POSSESSION OF A FIREARM, AND SENTENCE OF LIFE IN PRISON WITHOUT PAROLE AS A HABITUAL OFFENDER; COUNT III, SIMPLE ASSAULT, AND SENTENCE OF SIX MONTHS; AND COUNT IV, ROBBERY, AND SENTENCE OF LIFE IN PRISON WITHOUT PAROLE AS A HABITUAL OFFENDER, WITH ALL SENTENCES TO RUN CONCURRENTLY WITH ALL OTHER HINDS COUNTY SENTENCES, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.**

**IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR AND GREENLEE, JJ., CONCUR. WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., NOT PARTICIPATING.**